Frank L. Robinson and Margaret N. Robinson v. Commissioner.
Robinson v. Commissioner
Docket No. 93655.
United States Tax Court
T.C. Memo 1963-209; 1963 Tax Ct. Memo LEXIS 134; 22 T.C.M. (CCH) 1043; T.C.M. (RIA) 63209; August 6, 1963
Frank D. Coffey, Ellison Bldg., Fort Worth, Tex., for the petitioners. Lyle Walker, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined a deficiency in the income tax of petitioners for the taxable year 1959 in the amount of $667.15. The only issue before us is whether an amount paid by petitioner Margaret N. Robinson, a real estate agent, to the Chamber of Commerce of Fort Worth, Texas, to cover her expenses for a tour of Africa is deductible as an ordinary and necessary business expense. Findings of Fact Some of the facts have been stipulated and are so found. Petitioners, Frank L. Robinson and Margaret N. Robinson, are husband and wife residing in Forth Worth, Texas. They filed *135 their joint income tax return for the calendar year 1959 with the district director of internal revenue, Dallas, Texas. During the year in issue, and for a period prior to such time, Margaret N. Robinson (hereinafter referred to as petitioner) was employed on a commission basis as a real estate saleslady with Clark & Henry, realtors of Fort Worth, Texas. She had a license to sell real estate in the State of Texas which required her to be associated with a real estate broker. Although employed by Clark & Henry, petitioner operated her real estate business independently. Clark & Henry was a member of the Fort Worth Chamber of Commerce, which for several years had sponsored tours to such places as Mexico, the West Indies, Central America, South America, and Europe. An invitation to participate in each tour was issued to Clark & Henry. In the latter part of 1959 the Fort Worth Chamber of Commerce (hereinafter referred to as Chamber of Commerce) sponsored a trip to Africa. B. D. Henry, who was an employer of petitioner and who had participated in the first Chamber of Commerce tour of Mexico, recommended the African tour to petitioner. He advised her that she would make good contacts *136 with people in other countries and with the other people who would make the trip. Petitioner, who had never been outside the United States except for a trip to Mexico, subsequently decided to make the African tour. She and 13 other Texans, not all from Fort Worth, signed up with the Chamber of Commerce. The group included several farmers and ranchers, an attorney, a geologist, an oil man, a Cadillac dealer, and several housewives. Arrangements for the tour were made by the Chamber of Commerce and World Travel Association of Fort Worth. In addition to the main tour, participants were given an option of two extended tours which were not a part of the official Chamber of Commerce tour. Petitioner and 10 others took "Extension A" which included points of interest between Nairobi, Kenya, and Cairo, Egypt. In addition to the main tour and the extended tour, petitioner made separate arrangements with World Travel Association for a tour of Europe. Petitioner left Fort Worth with the group on August 9, 1959, and returned to Dallas by separate arrangements on October 11, 1959. In accordance with the itinerary of the African trip, the participants visited Portugal, Ghana, Belgian Congo, *137 French Equatorial Africa, Union of South Africa, Rhodesia, Kenya, Uganda, Ethiopia, Sudan, and Egypt. In many of the countries the group was met and entertained by Chamber of Commerce officials, local dignitaries, and the American Embassies. The Chamber of Commerce group gave several luncheons and dinners during the tour for these officials. The cost of such events was divided among the participants. At some of the luncheons petitioner was seated with realtors of that particular country, but such affairs were short and she remembered none of their names and had not contacted any of these acquaintances since her return to Fort Worth. Petitioner observed "real estate" as she toured Africa and was taken on tours of housing projects in several cities. The major portion of the participants' time on the trip was spent sight-seeing. Among the points of interest visited by the group were the principal cities of Africa, Premier Diamond Mine, the Cullinan Diamond, Congo River, Cape of Good Hope, Chapman's Peak, Valley of a Thousand Hills, Zula Reserve, Durban's Table Mountain, Hluhluwe Game Reserve, Victoria Falls, Boiling Pot of Palm Grove, Mahdi's Tomb, Elephantine Island, Valley of the *138 Kings, Nile River, Old Cairo, Mosque of Mohammed Aly, world famous native bazaars, and Kruger National Park. Aside from the planned activities, several days were provided for the leisure of the group. The Texas group received publicity from local African newspapers covering the African tour and its participants. One article in The Natal Daily News described real estate agency work in America as related by petitioner. Petitioner departed from the main tour for 5 days for a trip to Southern Rhodesia to see her daughter and son-in-law whom she had not seen in 2 1/2 years. She visited with them at the place where her son-in-law served as a missionary. Her daughter was expecting a baby during the latter part of that year. An article in the Cape Times, an African paper, described petitioner's visit with her children as "the highlight of her trip." After returning to the group, petitioner and 10 others began "Extension A" which ended 11 days later at Cairo. From Cairo petitioner commenced separate American Express arrangements for her two-week tour of Europe where she visited Rome, Florence, Venice, Milan, Paris, and London. While in Addis Ababa, Ethiopia, petitioner met Mary Manchester, *139 a traveling secretary for the American Embassies, who had been out of the United States for 14 years. Mary Manchester subsequently came to Fort Worth to visit her mother who lived there. She contacted petitioner who later negotiated a real estate transaction for her and sold a house to a friend of Mary's aunt. After returning from Africa, petitioner did business with Clyde Mays, an attorney who was a member of the tour group, and with Good Luck Oil Company, both of whom were clients of Clark & Henry prior to the African tour. Petitioner's business also increased prior to the trip because B. D. Henry, her employer, referred customers to her. Since her tour of Africa, petitioner has had opportunities to speak to the T.C.U. Garden Club, a church group, and a group of ladies in the insurance business. She has also had occasions to show films of some of the countries she visited. The tour participants were billed through the Chamber of Commerce which in turn collected from each individual. Petitioner paid the Chamber of Commerce $2,839 for her share of the tour cost. Of this amount, $2,423 was for the main tour to Africa and $416 was for "Extension A." The cost of the European tour *140 was paid directly to the World Travel Service. In petitioners' joint income tax return for 1959, a deduction in the amount of $2,839 was claimed as an ordinary and necessary business expense of petitioner as "The cost of my part of my participation in the 1959 Fort Worth Chamber of Commerce Good Will and Trade Tour in Africa." This amount does not include the expenses incurred in connection with petitioner's visit with her children or the trip to Europe. In his statutory notice of deficiency, respondent determined that the travel expense for the trip to Africa was not an allowable deduction. Petitioner participated in the Chamber of Commerce tour primarily for the personal purposes of traveling abroad and of visiting her children. The travel expenses of $2,839 were not ordinary and necessary business expenses. Opinion Whether the expenditures here involved qualify for deduction as ordinary and necessary expenses incurred in petitioner's trade or business is essentially a question of fact. To prevail the petitioner has the burden of proving that the travel expenses she incurred on her tour of Africa were both ordinary and necessary to her business as a real estate agent within *141 the scope of section 162(a) of the Internal Revenue Code of 1954. [1] It was therefore incumbent upon petitioner to show that the travel expenses were proximately related to her business of selling real estate and were not incurred primarily for her personal benefit. Robert Lee Henry, 36 T.C. 879 (1961); Alexander P. Reed, 35 T.C. 199 (1960); Chas. D. Long, 32 T.C. 511 (1959), affd. 277 F. 2d 239 (C.A. 8, 1960). While petitioner has not clearly designated her expenditures as any particular type of business expense, we do not think she has satisfied the prerequisites for deductibility under any theory. Petitioner testified that her purpose in participating in the Chamber of Commerce tour was "to get a name." But she has failed to show how this venture could have been reasonably expected to advertise her real estate business. The very nature of the trip, as evidenced by its motivation, *142 planning, and itinerary, could not have been calculated to successfully publicize or directly benefit any of the participants' trades or businesses. Most of the publicity, as planned, appeared in local African newspapers. It would appear quite unlikely that the publicity given the group in Africa could have been expected to affect petitioner's clientele in Fort Worth, Texas. With the exception of one newspaper article, which appeared in The Natal Daily News, there is no evidence of newspaper articles or public appearances connecting petitioner with her real estate business. Moreover, petitioner has not adequately shown any actual business benefit, economic or otherwise, from her participation in the Chamber of Commerce tour. She points specifically to business which she was able to transact for Clyde Mays, who was a member of the touring group, Good Luck Oil Company of Fort Worth, and Mary Manchester, whom she met in Africa. These instances alone do not convince us of a general business increase resulting from the African tour. Clyde Mays and Good Luck Oil Company were already clients of Clark & Henry and, therefore, could not be considered new sources of business. The frequency *143 of, or the reason for, their dealings with petitioner is unknown. The only new source of business was derived from this chance meeting with Mary Manchester. The business which resulted from this meeting was due principally to the fact that Mary's mother, whom she visited periodically, happened to live in Fort Worth. If this had not been the case, petitioner would never have received any business as a direct result of her trip. It is our view that the African tour could not, and did not, effectively advertise petitioner as a real estate agent, and that any relationship between the tour and her business was remote and incidental. Similarly, we regard her contacts with African realtors and her visits to real estate projects in cities she visited as more attributable to professional curiosity and interest than to an intent on petitioner's part to enhance her knowledge or skill in the real estate business. All of the evidence, and particularly the petitioner's own testimony, convinces us that the main purpose of the trip was personal in nature. The itinerary of the tour indicates that most of the major tourist attractions in Africa were to be visited and that little time was to be devoted *144 to official Chamber of Commerce affairs or business endeavors. Both the planning and the itinerary clearly show that the trip was to be primarily sight-seeing for pleasure. We think petitioner's decision to make the trip was motivated by her desire to travel to other parts of the world and to see her daughter and son-in-law, who were expecting a child. While the expenses relating to the European tour and the side trip to Southern Rhodesia to visit her daughter were not claimed as deductions and are not here in issue, there is no doubt that the African trip provided petitioner with the opportunity of satisfying these personal desires. Especially is this true when we consider, as we do, the natural affection of a mother for her daughter and the effervescent pride and anxiety of a prospective grandmother. Although we are not unmindful of the value of individual publicity and personal contacts to one engaged in a clientele-type business, we cannot find from this record, which contains such strong evidence of personal objectives, that the petitioner's expenditures for the African tour were proximately related to her business as a real estate agent. Thus, we hold that they are not ordinary *145 and necessary expenses under section 162(a). Decision will be entered for the respondent. Footnotes
1. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *↩