*Decision will be entered under Rule 50.*

THOMAS W. AND JENNIFER A. GALLERY, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6408–69SC. Filed November 17, 1971.

Thomas W. Gallery, pro se.
*Gary F. Walker*, for the respondent.

WITHEY, *Judge:* Respondent determined a deficiency in petitioners' joint Federal income tax for the year 1967 in the amount of $175.73.

The only issue for decision is whether petitioners are entitled to deductions claimed for education, travel, meals, and lodging incurred by Thomas W. Gallery in 1967 while attending the College of Engineering at the University of Detroit in Michigan.

### FINDINGS OF FACT

Some of the facts have been stipulated and together with stipulated exhibits are so found and incorporated herein by this reference.

The petitioners, Thomas W. and Jennifer A. Gallery, are husband and wife whose legal address was Detroit, Mich., at the time they filed the petition herein.

Petitioners were married in Buffalo, N.Y., on August 12, 1967. They filed a joint Federal income tax return for the taxable year 1967 with the district director of internal revenue at Covington, Ky.

In August 1966, Thomas W. Gallery, hereinafter sometimes called petitioner, transferred from Canisius College in Buffalo, N.Y., to the College of Engineering at the University of Detroit in Michigan (hereinafter sometimes referred to as university), where he began studies as a junior. In September 1966, the university made available to petitioner a brochure prepared by Ford Motor Co., hereinafter sometimes called Ford, and given to the university to distribute to students interested in Ford's "College Cooperative Program." The preface of this brochure describes Ford's role in cooperative education as follows:

Cooperative Education is a unique plan of education that requires students to leave the classroom at regular intervals to test career interests and aptitudes on work assignments with approved employers.

Ford Motor Company has participated in cooperative education on an increasing scale since 1953, and Company management is keenly aware of the responsibility the Company shares with the colleges for the education and professional development of the students employed on the Ford College Cooperative Program.

The brochure also states, in part, that:

Ford Motor Company management believes that the opportunity for students to work on assignments that are closely related to their college majors is excellent preparation for a career with the Company. During these challenging work assignments, cooperative students not only learn what their professional fields are like, but have the added advantage of competent supervisors to assist in their development.

Cooperative students are employed in many kinds of positions, and while it would be difficult to describe each position in detail, in general it can be said that three basic considerations determine the position to which you may be assigned:

Your educational background,
Your career interest and professional objective,
The needs of the Company.

With these three considerations in mind, each candidate is carefully screened and evaluated by a Company representative. The purpose of the interview is to determine whether your skills, abilities, and interests are consistent with available cooperative positions and whether the Company representative believes you will be able to carry out the responsibilities of the available position.

The responsibilities of the positions are described in individual work plans prepared by the Company. Work plans are a vital part of the cooperative program, and Company coordinators attempt to develop work plans that will give cooperative employes an understanding of what careers with the Company will encompass. They describe the kinds of assignments that you are expected to complete during succeeding work periods. In drawing up the work plans, the Company attempts to make each work assignment challenging and productive. Naturally, work plans must be flexible. The strength of cooperative education is that it gives cooperative employes a chance to test interests and abilities under actual work conditions, and it gives management an opportunity to decide whether interests and aptitudes are consistent with skills and abilities. Your interests may change or you may show exceptional abilities that will materially affect the kinds of work assignments that will follow—and because of this, work plans are kept flexible.

\*    \*    \*    \*    \*    \*    \*

Only cooperative students with potential for careers with the Company are selected for the Ford College Cooperative Program. For this reason, Company management makes every effort to see that you succeed, and for its part, the Company:

\*    \*    \*    \*    \*    \*    \*

*Evaluates the cooperative student's performance at regular intervals;*
At the end of each work period, supervisors give each cooperative employe a formal performance review. This review is in addition to day-to-day counseling received. The purpose of the review is to advise the student how he has done, where he could have improved, and what action should be taken in preparation for the next work assignment.

*Maintains continuing contact with your college coordinator;*
In this way, your college coordinator knows how you are doing "on the job," and the Company is kept aware of your progress on campus.

*Makes employment offers to those cooperative students who have demonstrated the potential to succeed as a Ford employe.*
Offers of regular employment are made (before they return to school for their final school term) to those cooperative students who complete the program in a satisfactory manner.

The personnel manual of Ford entitled "College Cooperative Program Personnel Benefits" states, in material part, as follows:

In general, college cooperative students are regular, full-time non-exempt salaried employes and are entitled to certain salaried personnel benefits.

\* \* \* When college cooperative students return to college they should be granted educational leaves-of-absence without pay.

Since Cooperative Program participants generally work six months or less each year, the following salaried benefits will be applied in accordance with the procedure outlined below:

*Vacation* for a cooperative student will be accrued based on the number of months worked prior to January 1 of the vacation season, but not to exceed 5

days' vacation per year ("month worked" means any part of a month in which an employe has worked except the month he is placed on the leave unless he works the last day of the month) and must be taken during a work period only. When a co-op completes the program and is placed on a regular classification, he will accrue vacation credits on the same basis as other regular salaried employes.

*Sick Leave*—A cooperative student is eligible during "work periods" only for one-half the medical leave days for which regular full-time employes are eligible (see Supervisor's Manual).

*Personal Leave With Pay*—A cooperative student is eligible during "work periods" only for one-half the personal leave days for which regular full-time employes are eligible (see Supervisor's Manual).

\*      \*      \*      \*      \*      \*      \*

*Death Benefit*—Ten working days' pay will be issued to the estate or, if permitted by local law, to the appropriate next of kin of the deceased if the deceased has two or more years of service.

\*      \*      \*      \*      \*      \*      \*

*General Retirement Plan*—A cooperative student will be eligible to participate in the contributory portion of the Plan after two years of continuous service. Service credits for retirement eligibility and non-contributory benefits are credited at the rate of 1/10 of a year for each month of employment during which pay is received from the Company.

*Transportation Expenses*—If a cooperative applicant is brought in for interview prior to being hired, the location calling him in should reimburse him for his travel expenses.

The Company *does not* pay transportation expenses to and from school at the completion and start of "work periods".

In the fall of 1966, Gallery filed an application to participate in the "College Cooperative Program" offered by the university and Ford Motor Co. The application was filed with the Coordinator of Cooperative Education at the University of Detroit and was forwarded by the university along with its recommendation to Ford.

During Thanksgiving vacation, petitioner visited his parents in Eggertsville, N.Y., and on November 23, 1966, he contacted a Ford representative in Buffalo and discussed his application for employment in Ford's College Cooperative Program.

After completing the 1966 fall trimester at the University of Detroit on December 19, 1966, Gallery began his first cooperative program employment period with Ford at a stamping plant in Buffalo, N.Y.

During the period of time petitioner worked at the stamping plant in Buffalo, he lived with his parents in Eggertsville, N.Y.

On April 29, 1967, Gallery concluded his first cooperative work period at the Buffalo stamping plant and returned to the University of Detroit to attend school for the 1967 summer trimester.

After completing the 1967 summer trimester on August 21, 1967, Gallery began his second cooperative program employment period with Ford at a frame plant in Dearborn, Mich.

On January 4, 1968, Gallery concluded his second cooperative work period at the Dearborn frame plant and returned to the University of Detroit to attend school for the 1968 winter trimester.

Petitioner, on his joint Federal income tax return for 1967, indicated his employer to be the Ford Motor Co. (Frame Plant), Dearborn, Mich., and reported wages in the amount of $6,892.33. From this amount, petitioner deducted as an adjustment to income, the total amount of $1,188 which he itemized on Form 2106, i.e., "Statement of Employee Business Expense" as follows:

| | |
|---|---|
| Meals and lodging (at University of Detroit) | $400. 00 |
| Automobile expenses | 63. 00 |
| Tuition | 625. 00 |
| Books and materials | 100. 00 |
| Adjustment increase to standard deduction | (263. 13) |
| Total increased adjustment to taxable income | 924. 87 |

On the same schedule (Form 2106), petitioner stated that he studied dynamics, analog and digital computers, electrical circuits, and science of material at the University of Detroit. He also stated therein that "Buffalo Stamping Plant required me to take these courses in the summer session to keep my job and improve my skills."

Respondent determined that the aforementioned deductions for "employee business expenses" were not allowable under sections 162, 262, and 274 of the Internal Revenue Code of 1954.

OPINION

The controversy involved herein concerns a deduction in the aggregate amount of $1,188 claimed by petitioner as "educational expenses" and "business expenses" he incurred in 1967 for tuition, travel, meals, and lodging while in attendance in his junior year at the University of Detroit in the College of Engineering. Section 162(a) of the 1954 Code[1] allows as a deduction all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. Section 262 of the Code provides that with certain exceptions not here pertinent, no deduction shall be allowed for personal, living, or family expenses.

The deductibility of education expenses is governed by section 162(a) and more particularly by section 1.162–5, Income Tax Regs., which was substantially revised in 1967. The respondent has ruled that taxpayers may rely on either the revised regulations or the pre-1967 regulations with respect to taxable years beginning before January 1, 1968. Rev. Rul. 68–191, 1968–1 C.B. 67; see sec. 7805(b). The issue with

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended.

respect to the 1958 version of regulations section 1.162–5 *supra* turns on the factual question whether the taxpayer's primary purpose in undertaking the education was to maintain or improve skills required by him in his employment. The question with respect to the 1967 regulation is the same except that the taxpayer's primary purpose is not germane. As petitioner lacked legal counsel, we shall consider both the old and new regulations in deciding the instant case. See *Ronald F. Weiszmann,* 52 T.C. 1106 (1969), affirmed per curiam 443 F. 2d 29 (C.A. 9, 1971).

Section 1.162–5, Income Tax Regs. (1958),[2] provides that expenditures made by a taxpayer for his education are deductible if they are for education undertaken primarily for the purpose of maintaining or improving skills required by him in his employment or other trade

---

[2] Sec. 1.162–5, Income Tax Regs., provides in part:

Sec. 1.162–5  Expenses for education.

(a) Expenditures made by a taxpayer for his education are deductible if they are for education (including research activities) undertaken primarily for the purpose of:

(1) Maintaining or improving skills required by the taxpayer in his employment or other trade or business, or

(2) Meeting the express requirements of a taxpayer's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the taxpayer of his salary, status or employment.

Whether or not education is of the type referred to in subparagraph (1) of this paragraph shall be determined upon the basis of all the facts of each case. If it is customary for other established members of the taxpayer's trade or business to undertake such education, the taxpayer will ordinarily be considered to have undertaken this education for the purposes described in subparagraph (1) of this paragraph. * * *

(b) Expenditures made by a taxpayer for his education are not deductible if they are for education undertaken primarily for the purpose of obtaining a new position or substantial advancement in position, or primarily for the purpose of fulfilling the general educational aspirations or other personal purposes of the taxpayer. The fact that education undertaken meets express requirements for the new position or substantial advancement in position will be an important factor indicating that the education is undertaken primarily for the purpose of obtaining such position or advancement, unless such education is required as a condition to the retention by the taxpayer of his present employment. In any event, if education is required by the taxpayer in order to meet the minimum requirements for qualification or establishment in his intended trade or business or specialty therein, the expense of such education is personal in nature and therefore is not deductible.

Sec. 1.162–5, as amended by T.D. 6918, 1967–1 C.B. 36:

Sec. 1.162–5  Expenses for Education.

(a) *General rule.*—Expenditures made by an individual for education (including research undertaken as part of his educational program) which are not expenditures of a type described in paragraph (b)(2) or (3) of this section are deductible as ordinary and necessary business expenses (even though the education may lead to a degree) if the education—

(1) Maintains or improves skills required by the individual in his employment or other trade or business, or

(2) Meets the express requirements of the individual's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the individual of an established employment relationship, status, or rate of compensation.

(b) *Nondeductible educational expenditures.*—(1) *In general.*—Educational expenditures described in subparagraphs (2) and (3) of this paragraph are personal expenditures or constitute an inseparable aggregate of personal and capital expenditures and, therefore, are not deductible as ordinary and necessary business expenses even though the education may maintain or improve skills required by the individual in his employment or other trade or business or may meet the express requirements of the individual's employer or of applicable law or regulations.

or business or of meeting the express requirements of his employer imposed as a condition to the retention of his salary, status, or employment. Such regulations further provide that the expenditures made by a taxpayer are not deductible if they are for education undertaken primarily for the purpose of obtaining a new position or substantial advancement in position, or primarily for the purpose of fulfilling the general education aspirations or other personal purposes of the taxpayer.

Essentially, it is petitioner's position that the educational expenses in dispute were incurred in order to meet the minimum requirements of his employer, Ford Motor Co., to retain his job and to improve his skills. Petitioner did not cite any statutory provision, regulation, or case authority, nor did he submit any briefs in support of his claims. Respondent determined that the deductions involved were not allowable under sections 162, 262, and 274.

Respondent's determination "has the support of a presumption of correctness, and the petitioner has the burden of proving it to be wrong." *Welch* v. *Helvering*, 290 U.S. 111 (1933). His evidence must be convincing. *Peter G. Corbett*, 55 T.C. 884, 887 (1971). We do not believe that petitioner has satisfied his burden. The issue herein is one of fact to be determined from all of the evidence. *Condit* v. *Commissioner*, 329 F. 2d 153, 154 (C.A. 6, 1964), affirming per curiam a Memorandum Opinion of this Court.

We note that petitioner in his income tax return enumerated several scientific courses which he studied at the university during 1967. However, there is no evidence that these courses were different from those prescribed by his university as part of its academic requirements to obtain a degree in engineering, or that Gallery changed his curriculum or added any of these courses to meet the express (or implied) requirements of Ford. Conceivably, the aforementioned courses may have had a proximate and parallel relationship to his work at Ford and may have improved his skill or raised his level of competence in performing his assignments under the "College Cooperative Program" operated by Ford, but in the context herein, this would not be determinative. Absent evidence to the contrary, we are convinced that the work program in which Gallery participated at Ford was a significant part of his overall training and curriculum at the university leading toward a degree in engineering. That Gallery received compensation ($6,892.33) from Ford while engaged in the latter's educational program does not alter his true status as a "cooperative student" who left his classroom at the university at regular intervals to test his career interests and aptitudes on work assignments with a "potential" employer. Although the affirmative evidence is meager as to some material

matters, it appears that the university expected students working toward a degree in engineering to follow required guidelines, including the type of practical training in engineering offered by Ford. According to Ford's brochure, university students who participated in Ford's College Cooperative Program worked on assignments that were closely related to their college majors, which helped the individual student become a "better prepared college graduate" and afforded him "excellent preparation for a career with the Company."

Apparently, Gallery recognized his position with Ford as a temporary one. Once he obtained his degree in engineering, he would either be promoted to the position of engineer with Ford or would leave Ford to find such a position elsewhere. Although Ford, in general, considered college cooperative students as regular, full-time salaried employees, we believe that the work assignments involved were actually part of a training program which would end when Gallery graduated. No evidence was adduced to show that he had a high probability or assurance of permanent employment by Ford upon graduation from the university. See *Ronald F. Weiszmann, supra.* Indeed, petitioner testified that he was under no obligation to work for Ford after graduation and that he planned to obtain employment with whomever he chose. On these facts, it is impossible to conclude that petitioner expended a great deal of time and money to study engineering at the university simply for the purpose of either maintaining his job skills or his position as a "cooperative student" with Ford. It seems evident to us that he worked at Ford in order to obtain a professional status which would yield greater benefits both monetary and otherwise.

The entire record strongly indicates that petitioner was not engaged in a trade or business as that terminology is used in section 1.162–5, Income Tax Regs. As we view it petitioner's employment status at Ford was an integral part of his overall education in engineering at the university; he was not engaged in any endeavor other than being a student. Petitioner's principal motive for undertaking the education at the university was a personal one such as eventually to meet the minimum requirements to obtain a degree in engineering. He was preparing to enter the profession or trade or business of engineering. Expenses incurred in such preparation are not deductible under section 162 (a) and the correlative regulations, section 1.162–5, but are nondeductible personal expenses within the intendment of section 262. *Fleischer* v. *Commissioner,* 403 F. 2d 403, 406 (C.A. 2, 1968), affirming a Memorandum Opinion of this Court; *Don E. Wyatt,* 56 T.C. 517, 521 (1971); *James A. Carroll,* 51 T.C. 213, 216 (1968), aff'd. 418 F. 2d 91 (C.A. 7, 1969); see *C. Fink Fischer,* 50 T.C. 164 (1968); *Henry G. Owen,* 23 T.C. 377, 381 (1954).

With respect to the question of the deductibility of the amount petitioner claimed as traveling expenses, including amounts expended for meals and lodging, while purportedly away from home in the pursuit of his business, it is well settled that for expenses of the type claimed to be deductible under section 162, they must be shown to have been incurred primarily for the business carried on by the taxpayer. See *Robert Lee Henry*, 36 T.C. 879, 884 (1961). Our conclusion hereinabove that petitioner during the taxable year involved was essentially a student preparing to become a professional engineer is also dispositive of this issue. Petitioner has failed to establish that the travel expenditures in question were ordinary and necessary expenses incurred in carrying on a trade or business within the meaning of section 162. Petitioner has likewise failed to substantiate such expenditures as required by section 274 of the Code. *Harold T. Bradley*, 57 T.C. 1 (1971).

*Decision will be entered for the respondent.*