T.C. Memo. 1995-518


UNITED STATES TAX COURT


SHERMAN J. MILLER AND ALICE K. MILLER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 5593-93.                     Filed October 30, 1995.


<u>Nick R. Hay</u>, for petitioners.

<u>Mary E. Dean</u> and <u>Sherri L. Feuer</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

SCOTT, <u>Judge</u>:  Respondent determined deficiencies in
petitioners' Federal income taxes and additions to tax for the
calendar years 1987 and 1988 as follows:

|  |  | Additions to Tax | | | |
|---|---|---|---|---|---|
| Year | Deficiency | Sec. 6653(a)(1)(A) | Sec. 6653(a)(1)(B) | Sec. 6653(a)(1) | Sec. 6661 |
| 1987 | $8,195 | $410 | [1] | -- | $2,049 |
| 1988 | 5,062 | -- | -- | 253 | 1,266 |

[1] 50 percent of the interest due on $7,780.

All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Some of the issues raised by the pleadings have been disposed of by agreement of the parties, leaving for decision: (1) Whether petitioners are entitled to deduct travel expenses, including expenses of maintaining a condominium for trips to Hayward, Wisconsin, as ordinary and necessary business expenses related to an insurance business of Sherman J. Miller; (2) whether petitioners are entitled to deduct amounts paid as dues to the Midland Hills Country Club of Roseville, Minnesota, for the years at issue; (3) whether petitioners are liable for additions to tax for negligence under sections 6653(a)(1)(A) and (B) for 1987 and section 6653(a)(1) for 1988; and (4) whether petitioners are liable for additions to tax for substantial understatement of tax under section 6661 for each of the years 1987 and 1988.

## FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Petitioners, husband and wife, who resided in Roseville, Minnesota, at the time of the filing of their petition in this case, filed their joint Federal income tax return for the calendar year 1987 with the Andover Internal Revenue Service Center, and filed their joint Federal income tax return for the calendar year 1988 with the Kansas City Internal Revenue Service Center.

During the years 1987 and 1988, Sherman J. Miller (petitioner) was employed as a full-time school teacher in the St. Paul, Minnesota, area. During these years, petitioner was also self-employed selling insurance. He was licensed to sell insurance in both Wisconsin and Minnesota. Petitioner conducted his insurance business in the St. Paul area out of his home in Roseville, Minnesota.

During the years at issue, petitioner made trips in the summer months to the Hayward, Wisconsin, area. Hayward is a recreational area located approximately 160 miles northeast of St. Paul, which attracts people from Wisconsin, Minnesota, Ohio, and Illinois. Petitioner spent approximately 35 days in Hayward during the summer months of each of the years 1987 and 1988. Petitioner usually spent 2 days in Hayward on each trip.

Petitioner solicited clients and potential clients for his insurance business in the St. Paul, Minnesota, area through both direct mail and by field work, which he referred to as "prospecting". Petitioner's insurance-related activity in

Hayward consisted primarily of "prospecting" in the years here in issue. Petitioner considers that when an insurance agent meets potential clients who are willing to speak about insurance, the agent is "prospecting". Petitioner's "prospecting" activities in the Hayward area consisted of going to dinner, playing golf at the Tagalong Country Club, and having drinks with persons he considered potential clients.

For the taxable year 1987, petitioner reported gross receipts in the amount of $6,795 from his insurance business, of which $2,249 was identified as related to business in Hayward, Wisconsin. For the taxable year 1988, petitioner reported gross receipts in the amount of $5,803, none of which was identified on the return as relating to business in Hayward.

Petitioner deducted expenses that he claimed as related to his insurance business in Hayward on both Schedule C, Profit (and Loss) from Business or Profession, and Form 2106, Employee Business Expenses, of his Federal income tax return for each of the taxable years 1987 and 1988.

On August 7, 1984, petitioners purchased a condominium that was located approximately 14 miles southwest of Hayward (the condominium) for $39,417. The condominium was a three-bedroom unit. For the taxable years 1984 through 1986, petitioners, on Schedule E of their Federal income tax returns, deducted expenses connected with the condominium, listing it as rental property.

During the years at issue, petitioner traveled from his home in the St. Paul area to Hayward in a 1986 GMC van which he used solely for trips to Hayward. When he was in Hayward, petitioner ate and slept at the condominium. Petitioner's wife accompanied him on 50 to 60 percent of his trips to Hayward. Some of the time, petitioner's wife helped petitioner drive. While in Hayward, petitioner's wife would use the condominium for her personal activities, including reading, knitting, and embroidering. Petitioner's wife would also shop in the Hayward area. Sometimes petitioner's wife would play golf with petitioner and other persons at the Tagalong Country Club near Hayward and go out to dinner with petitioner and other persons in Hayward. Petitioners maintained a boat which was located near the Hayward condominium.

There were hotels, motels, and condominiums available for rent in the Hayward area during the summers of 1987 and 1988. Condominiums were rented in the Hayward area for approximately $100 a day.

During the years at issue, the condominium was unsuitable for use during the winter months.

During the years at issue, petitioners were members of and paid dues to the Midland Hills Country Club of Roseville, Minnesota (the country club). Both petitioners used the country club. Both petitioners played golf at the country club. Petitioner sometimes had meals and drinks at the country club

with clients and potential clients in connection with his insurance-prospecting activity.  The country club was also used by petitioners' family for a family wedding in 1987.  Petitioner treated various required charges at the country club, such as valet charges, ladies prize fee charges, and locker room charges, in the same manner he treated the charges for dues.  These charges were incurred by country club members regardless of whether the member actually used these services.  There were charges made by petitioner at the country club on 33 days during 1987 which related to drinks or meals with prospective insurance clients.

On their 1986 and 1987 Federal income tax returns, petitioners deducted expenses for the 1986 van, the condominium, and meals and entertainment.  Petitioners claimed as deductions on their Federal income tax returns the following expenses which were stated to be related to petitioner's insurance activities in Hayward:

| Expense | 1987 | 1988 |
|---|---|---|
| **Van Expenses** | | |
| Gas, oil, repairs | $1,760 | $959 |
| Other | 239 | 364 |
| Depreciation | 4,545 | 4,426 |
| Subtotal | 6,544 | 5,749 |
| **Condominium Expenses** | | |
| Depreciation - condominium | 2,759 | 2,759 |
| - furnishings | 933 | 1,045 |
| Insurance | 177 | 177 |
| Real estate taxes | 712 | 717 |
| Other assessments | 100 | 100 |
| Maintenance fees | 400 | 400 |
| Utilities | 330 | 286 |
| Repair | 32 | 25 |
| Other supplies | 926 | 1,034 |
| Subtotal | 6,369 | 6,543 |
| Meals and Entertainment | 547 | 574 |
| Total Expenses | 13,460 | 12,866 |

Petitioner compiled a list of business expenses for the years here in issue only at the time he prepared his tax return. Petitioner made notations on dinner receipts for country club dinners at the time he prepared his tax returns and not at the time of the dinner. Petitioner made a number of mistakes in his recordkeeping. Petitioner had lost or misplaced some of the receipts at the time of the trial of this case.

Petitioner went through his receipts at the time he prepared his returns to segregate them between items he considered business and items he considered personal at that time. Petitioner's schedule of insurance company expenses was prepared from receipts that he gathered from three different locations.

Petitioner kept some of his receipts relating to the Hayward area in a drawer.

Respondent in her notice of deficiency disallowed the deductions claimed by petitioners for expenses relating to the condominium and the 1986 van, and the deduction claimed for country club dues for each of the years 1987 and 1988 on the basis that petitioners' trips to Hayward were primarily personal and the primary use of the condominium was personal, and that petitioner had not established that the country club dues were deductible. Respondent determined that the real estate taxes on the condominium were deductible as an itemized deduction on Schedule A.

In 1987 petitioners claimed $4,419 for meals and entertainment on Form 2106. Respondent has conceded $1,050 of this amount, and petitioner has conceded $1,469. In 1988 petitioners claimed $3,245 for meals and entertainment. Petitioners have conceded $917 of this amount. Of the amount originally claimed, $1,900 and $2,328 of dues expenses paid to the country club remain at issue for the taxable years 1987 and 1988, respectively.

OPINION

Section 162(a)(2) allows as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including traveling expenses while away from home in the pursuit of a trade or business. Sec.

1.162-2(a), Income Tax Regs. If travel expenses are incurred for both business and other purposes, the travel expenses are deductible only if the travel is primarily related to the taxpayer's trade or business. Sec. 1.162-2(b)(1), Income Tax Regs. If a trip is primarily personal in nature, the travel expenses incurred are not deductible even if the taxpayer engages in some business activities at the destination. Sec. 1.162-2(b)(1), Income Tax Regs. Whether travel is related primarily to the taxpayer's trade or business or is primarily personal is a question of fact. See Holswade v. Commissioner, 82 T.C. 686, 698, 701 (1984).

Petitioner states that he originally purchased the condominium as an investment, but when he had difficulty renting it, he decided in 1987 to convert the condominium to business use as lodging when he traveled to Hayward. Petitioner testified that it was difficult to find a hotel room in Hayward during his visits there. However, he also stated that he had not been in business in Hayward until 1987, when he decided to use the condominium in his insurance business.

Petitioner called his business activity in Hayward "prospecting". He said that he used two primary methods of prospecting, which were direct mail and "sunshining", and that the method he used in Hayward was "sunshining". "Sunshining", according to petitioner, was meeting people who would be likely candidates for purchasing insurance. Petitioner stated that a

potential client was "anyone that is living and breathing and of appropriate age". If petitioner asked a golfing partner whether he needed insurance, he considered the game to be a business meeting and the expenses connected with that meeting deductible.

Petitioner's wife accompanied petitioner on 50 to 60 percent of his trips to Hayward. Petitioner testified that his wife accompanied him on these trips as a chauffeur, but there is nothing in the record to indicate that petitioner needed a chauffeur as an ordinary and necessary business expense.

Based on the record, we conclude that petitioners' trips to Hayward were primarily for personal activities, and, therefore, they are not entitled to deduct the travel expenses to Hayward or the expenses related to the condominium under section 162. Petitioner testified that he only visited Hayward during the summer months. Petitioner testified that he played golf "usually with a prospect or a client", implying that he also played golf without clients. Petitioner's wife testified that she used the condominium for personal use, including knitting and embroidering, and that she shopped in the Hayward area while on her trips there. The fact that petitioner's wife accompanied him on a substantial number of his trips to Hayward, without a showing that she assisted petitioner in any business activities, further indicates that the trips were primarily personal. Petitioners maintained a boat in Hayward. They claimed that the

boat was never used by them in the years here in issue, but did not explain why they kept it.

Petitioner contends that all his social contacts in Hayward, which to an appreciable extent were while playing golf, were business meetings. Petitioner offered a list of persons he claimed he met with in Hayward for business reasons. Some of these persons who were called as witnesses by respondent at the trial testified that they had no recollection of meeting with petitioner to discuss insurance during the years here at issue. Mrs. Carolyn Butterbaugh had no recollection of discussing insurance with petitioner during the dates petitioner claimed to have met with her. Mr. Richard Olsen stated that he never met with petitioner in the Hayward area. He further testified that he never purchased insurance from petitioner. Mr. John Rausch could not recall discussing insurance with petitioner. Some of these persons did recall playing golf with petitioner or with petitioner and his wife at the Tagalong Club in the Hayward area. Some of the people petitioner claimed he had business meetings with in Hayward were from the St. Paul area.

The discrepancy arising from petitioner's claims of business meetings with persons who denied they had business meetings with petitioner is explained by petitioner's definition of a business meeting. Petitioner defined the prospecting aspect of his business as "introducing yourself, shaking hands, * * * making people like you and want to be with you". Petitioner's business

deductions were for such activities as playing golf or having dinner with persons he considered potential clients, since occasionally he would ask them whether they needed insurance. Petitioner claims such activities were business meetings. Under section 162, however, a more direct, primary relationship to the production of business income must be shown to establish that such a meeting is a business meeting. Henry v. Commissioner, 36 T.C. 879, 884 (1961). Since petitioner has failed to prove that the trips to Hayward were more business than personal, the claimed costs associated with these trips are not deductible.

We are also unpersuaded by petitioner's argument that other lodging in the Hayward area during the summer months was not reasonably available. Petitioner testified that a depressed rental market was the reason he did not continue to use the condominium as rental property. Another witness, Mrs. Janet Loftus, testified as to the availability of hotels and condominiums in the area. The availability of lodging accommodations in Hayward was also testified to by Mrs. Carolyn Butterbaugh. Petitioner testified that condominiums rented for "about $100 a day". We find that the evidence indicates that other lodging would have been available to petitioner at a cost far less than maintaining the condominium. In our view, petitioner merely decided that he was dissatisfied with his rental income from the condominium and would find another use for it under which, in his view, he would be entitled to deduct the

expenses connected with the condominium.  Since he was an insurance agent, he decided that when he was in the Hayward area he would on occasion speak to a golfing partner or dinner companion about insurance and thereby justify deducting the costs connected with the condominium and his trips to Hayward.

We, therefore, sustain respondent's disallowance of petitioners claimed travel expenses to the Hayward area from Roseville.  Because we have concluded that the travel expenses are not deductible since they were not incurred primarily for business purposes, we need not address the issue of whether the expenses were reasonable.[1]

Next at issue is whether petitioner is entitled to deduct country club dues during the years at issue.  Section 274 generally disallows deductions for expenses for entertainment facilities, unless the taxpayer establishes that the facility was used primarily for the furtherance of the taxpayer's trade or business and that the item was directly related to the active conduct of such trade or business.  Sec. 274(a)(1)(B); sec. 274(a)(2)(C).  In order to show that the facility was used primarily for the furtherance of a taxpayer's trade or business, the taxpayer must show that the actual use of the facility during

---

[1]  For these same reasons, we also find that petitioners are not entitled to a deduction under sec. 212.  In order for petitioners to be entitled to a deduction under sec. 212, the predominant purpose and use of the property must not be for recreation, a hobby, or some other nonprofit motive.  Sec. 1.212-1(c), Income Tax Regs.

the taxable year was more for business use than for personal use, and the taxpayer is required to maintain records segregating the use of the facility into business and personal categories. Sec. 1.274-5T(c)(6)(iii), Temporary Income Tax Regs., 50 Fed. Reg. 46022 (Nov. 6, 1985). The requirements of section 274 are in addition to those of section 162, and petitioner must satisfy, as an initial matter, the "ordinary and necessary" business expense requirement of section 162. Randall v. Commissioner, 56 T.C. 869, 874-875 (1971).

Petitioner offered into evidence the receipts from the country club for the year 1987, which he determined were for business expenditures at the time he prepared his return. There was no evidence, however, that petitioner ever had any direct business meetings at the country club. There was only evidence of his prospecting activities, which did not rise to the level of a direct business meeting as required. Petitioner has failed to show that the activities at the country club, which afforded contacts with possible future clients, had any direct relationship to the production of business income. See Henry v. Commissioner, supra.

Petitioner contends that the receipts from the country club for 1987 illustrate that during more than 50 percent of the days that he used the country club, the use was for business purposes. He claims that for this reason he is entitled to a deduction under the "deemed to have established" rule of section 1.274-

2(e)(4), Income Tax Regs. We disagree that petitioner has established by these receipts that 50 percent of the total calendar days of his use of the country club during a taxable year were days of business use. Petitioner's claim is based on food and drink charges, which respondent agreed he was entitled to deduct. However, section 1.274-2(e)(4), Income Tax Regs., requires that the taxpayer show that he had a "substantial and bona fide business discussion", within the meaning of section 1.274-2(d)(3)(i)(a), Income Tax Regs., to count the day as a business use. Furthermore, there is no showing that petitioner and his family did not use the club on other days for golf, tennis, swimming, or other purposes which would not show on a food or beverage tab. The largest single bill in 1987 is for a wedding reception which petitioners consider use for 1 day. It is inconceivable that such an affair would not have required a number of other days of visits to the country club in planning the affair. The fact that respondent agreed that the relatively small amounts, as compared to other 1987 country club charges, shown on the thirty-three receipts were deductible by petitioner does not establish that the dues paid to the country club were ordinary and necessary expenditures under section 162. Randall v. Commissioner, supra. Petitioner had a family membership in the club. He has made no showing of how much his wife and children used the country club in 1987, and, other than his totally unsupported testimony that 50 percent of the use of the

club in 1988 was for business, there is no evidence of what, if any, business use was made of the country club in 1988.

Petitioners contend that, in any event, they are not liable for additions to tax for negligence pursuant to section 6653(a)(1)(A) and (B) for the taxable year 1987 and pursuant to section 6653(a)(1) for the taxable year 1988.  Negligence is defined as a lack of due care or a failure to do what a reasonable and ordinarily prudent person would do under the circumstances.  Neely v. Commissioner, 85 T.C. 934, 947 (1985).

Based on the record in this case, we find that petitioners have failed to show that they were not negligent.  Petitioner failed to keep adequate records of expenditures, particularly with regard to the activities at the country club.  Petitioner had lost or misplaced some of the receipts by the time of trial. Petitioner admitted to making several mistakes in the records that he did keep.  We, therefore, find that petitioners were negligent in keeping business records to verify the expenses of the insurance business for the years at issue.

Petitioners also contest respondent's determination of additions to tax under section 6661 for each of the years here in issue.  Section 6661(a) imposes an addition to tax of 25 percent of the underpayment attributable to a substantial understatement of income tax.  An understatement is defined as the tax required to be shown on the return less the tax shown on the return, reduced by any rebates.  Sec. 6661(b)(2).  An understatement is

substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000. Sec. 6661(b)(1)(A).

If a taxpayer has substantial authority for his tax treatment of any item on the return, the understatement is reduced by the amount of tax attributable to that item. Sec. 6661(b)(2)(B)(i). Similarly, the amount of understatement is reduced by the tax attributable to any item adequately disclosed either on the taxpayer's return or in a statement attached to the return. Sec. 6661(b)(2)(B)(ii).

Petitioners have not shown that there was either substantial authority for their position with respect to any of the items not conceded by respondent, or that there was adequate disclosure of any of these items on the returns. Petitioners' argument that there was substantial authority, merely because the issues were litigated in this case, is without merit. We, therefore, sustain the additions to tax under section 6661 for each of the years here in issue if, upon recomputation of petitioner's tax liability for the years here in issue, a substantial understatement as stated in section 6661(b)(1)(A) results.

Decision will be

entered under Rule 155.