J. WADE HARRIS and EDNAH HAWKINS HARRIS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Harris v. Commissioner
Docket No. 5715-73.
United States Tax Court
T.C. Memo 1975-276; 1975 Tax Ct. Memo LEXIS 96; 34 T.C.M. (CCH) 1192; T.C.M. (RIA) 750276; September 3, 1975, Filed John G. Heard and Glen A. Rosenbaum, for the Charles W. Woodward, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined deficiencies in petitioners' income taxes as follows: Year
Deficiency
1966
$11,580.62
1967
13,327.74
1968
11,046.85
1969
12,674.23
$48,629.44 Some issues were settled by stipulation. The remaining issues are: (1) Whether petitioner is entitled to yacht-related business entertainment deductions under sections 162 and 274; [1] (2) Whether petitioner must recapture depreciation for an exchange of yachts under sections 1031 and *99 1245; and (3) Whether petitioner must reduce investment credits on the purchase of yachts under sections 38, 47 and 48. FINDINGS OF FACT The exhibits and some of the facts have been stipulated and are found accordingly. J. Wade Harris (hereinafter petitioner) and Ednah Hawkins Harris, husband and wife, resided in Houston, Texas, when their petition was filed. Their Federal income tax returns for 1966 through 1969 were filed with the District Director of Internal Revenue, Austin, Texas. Petitioner has practiced medicine in Houston, Texas, for 41 years, specializing as a colon and rectal surgeon for the past 29 years. He enjoys a high reputation in the Houston medical community. Petitioner acquired a 36-foot Chris Craft yacht in 1962 for $31,282.77. In November of 1966, petitioner exchanged the Chris Craft, which had an adjusted tax basis of $9,837.08, for a 41-foot Hatteras yacht. Petitioner received a bill of sale for $16,000 for the Chris Craft as a trade-in allowance, and he paid an additional $45,013 for the Hatteras. Petitioner deducted the following amounts *100 in connection with his yachts, all of which were disallowed by respondent: Boat
Boat
Promotion Year
Depreciation
Expense
Expense on Boat
1966
$ 2,881.44
$5,681.69
$ 526.38
1967
11,082.08
8,203.77
392.72
1968
8,993.77
5,049.39
1969
7,290.06
7,494.95
452.42 Respondent also increased petitioner's 1966 taxable income by $6,126.92 for depreciation recapture on the yacht exchange, and increased petitioner's 1966 tax liability by $2,170 for recapture of a 1962 investment credit on the Chris Craft and by $1,400 for disallowance of a 1966 investment credit on the Hatteras. As a usual business practice petitioner maintained a referral card file which listed patients referred to petitioner by a particular doctor. Petitioner's normal practice was to review this referral file before entertaining a doctor on his yacht to familiarize himself with case histories of that doctor's recent referrals. The referral file cards and the boat log of guests, both having been stipulated into evidence, clearly established that petitioner received hundreds of referrals from doctors listed as guests aboard his yacht before, during, and after the years in question. *101 Substantially all of petitioner's patients are referred to him by other doctors. Prior to 1962 petitioner generated referrals by taking doctors out to dinner and sporting events, and by having parties, but after purchase of the Chris Craft in 1962 petitioner rarely entertained doctors other than on his yacht. Petitioner purchased the yacht because he believed the opportunity to discuss patients and generate referrals was better on his yacht than at a dinner, sporting event, or party. Normally petitioner only invited doctors aboard who had referred patients to him or who petitioner believed had referral potential, with most invitations going to those doctors who had referred the most patients. Petitioner usually did not reinvite doctors who had been aboard his yacht several times and had not referred any patients. Petitioner's format for entertaining doctors was to extend by telephone or in person an invitation for a fishing trip aboard his yacht. He did not specifically state a business purpose for the invitation. Petitioner's yacht cruised for approximately two hours to and two hours from th fishing location offshore. During this time petitioner discussed patients recently referred *102 to him by the doctor-guest, or discussed his medical practice and experience for the purpose of generating referrals. Some doctors would initiate the business discussion, but if not, petitioner initiated such a discussion in the morning on the way to the fishing location in case the doctor became seasick later in the day. Doctors who referred patients to petitioner believed the opportunity to discuss patients aboard petitioner's yacht to be helpful to them and a principal reason for referring patients to petitioner. Neither the doctor-guests nor petitioner brought patient records aboard the yacht. On a few days doctors cancelled planned visits aboard for reasons solely beyond petitioner's control. Petitioner also occasionally entertained hospital administrators, investment advisors, and a nurse who specifically assisted petitioner's medical practice by scheduling his hospital operations at convenient times for petitioner. Petitioner maintained a boat log indicating all uses of the yacht. The boat log listed by date the names of all guests who came aboard, and comments pertaining to fishing or weather were recorded if the yacht was taken offshore. Many guests indicated that they *103 were doctors when they signed the boat log. Petitioner did not record on the boat log the business relationship of a particular guest or the business purpose of having such guest aboard until after the years in issue. Although a fisherman since 1934, petitioner only fished approximately once a year before purchase of the Chris Craft in 1962. Petitioner had never owned a yacht prior to that purchase. Petitioner fished very little while entertaining doctors on his yacht because he generally assisted his doctorguests in fishing by performing such tasks as untangling fishing lines. Petitioner's children seldom were aboard his yacht. Petitioner's wife normally was aboard, serving as hostess and helping with the upkeep and running of the yacht. Petitioner asked doctor-guests to bring their wives or guests if desired, but usually the doctor-guests came alone. Petitioner did not allow children under 18 aboard. Although petitioner had known many of the doctor-guests for twenty to thirty years, he had, business aside, no meaningful social relationship with them. Drinking of alcoholic beverages on petitioner's yacht while offshore was minimal. Petitioner's personal enjoyment of the yacht *104 was secondary to engaging his doctor-guests in business discussions. OPINION The principal question is whether petitioner's yachtrelated expenditures were primarily for business or personal purposes. Specific issues concern deductibility of entertainment expenses under sections 162 and 274, recognition of depreciation recapture under sections 1031 and 1245, and investment credit reductions under sections 38, 47 and 48. Regarding the first issue, sections 162(a) and 274(a) and (d) must be satisfied to deduct entertainment expenditures. Wm. Andress, Jr.,51 T.C. 863, 866, 867 (1969), affd. per curiam 423 F. 2d 679 (5th Cir. 1970). Section 162(a), in part, allows as a deduction all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. Whether an expenditure is deductible under that subsection is essentially a question of fact. The burden of proof is upon taxpayer to show that the expenditure was not primarily *105 for social or personal purposes and that there existed a proximate rather than merely remote or incidental relationship between the expenditure and his trade or business. Commissioner v. Heininger,320 U.S. 467, 475 (1943); Robert Lee Henry,36 T.C. 879, 883, 884 (1961); Louis Boehm,35 B.T.A. 1106, 1109 (1937). Section 274(a) provides in part that no deduction otherwise allowable shall be allowed with respect to an entertainment facility unless the facility was used primarily for furtherance of taxpayer's trade or business and unless the expenditure was directly related to active conduct of such trade or business. Furthermore, the deduction cannot exceed the portion of such expenditure directly related to active conduct of taxpayer's trade or business. Section 274(d) provides in part that an otherwise deductible entertainment expenditure is not deductible unless taxpayer substantiates by adequate records or sufficient evidence the: (i) amount *106 of expenditure; (ii) time of entertainment; (iii) place of entertainment; (iv) business purpose of entertainment; and (v) business relationship of persons entertained. See generally sec. 1.274-5(b) (3), Income Tax Regs.; William F. Sanford,50 T.C. 823 (1968), affd. per curiam 412 F. 2d 201 (2d Cir. 1969), cert denied 396 U.S. 841 (1969); John L. Ashby,50 T.C. 409 (1968). An "adequate record" is defined in part as an entry in an account book, diary, or similar record made at or near the time of expenditure. Section 1.274-5(c) (2) (ii), Income Tax Regs. As to each expenditure element not substantiated by adequate records, taxpayer can satisfy the substantiation requirements by "sufficient evidence," defined in part as (1) taxpayer's own statement, whether written or oral, containing specific information in detail as to such element, and (2) other corroborative evidence sufficient to establish such element. Section 1.274-5(c) (3), Income Tax Regs.; William F. Sanford,supra at 829. If such element is the business relationship or business *107 purpose, the corroborative evidence may be circumstantial. Section 1.274-5(c) (3), Income Tax Regs.
Petitioner has clearly demonstrated that the yachtrelated expenditures were not primarily for social or personal purposes and that a proximate rather than merely remote relationship existed between the claimed expenditures and his medical practice. Unlike such cases as Robert Lee Henry,supra at 885, and Ralph E. Larrabee,33 T.C. 838, 843 (1960), petitioner received many referrals from his doctor-guests because of their opportunities to discuss patients, and his personal enjoyment of the yacht was secondary to engaging his doctor-guests in business discussions. Accordingly, based upon consideration of all facts presented, petitioner has satisfied the requirements of section 162(a). The two requirements of section 274(a) have also been satisified. First, the yacht was used primarily for furtherance of petitioner's trade or business within the meaning of section 274(a) and section 1.274-2(e)(4), Income Tax Regs. In making this determination we have counted dockside entertainment of guests as use of the *108 yacht in establishing primary use. Nicholls, North, Buse Co.,56 T.C. 1225, 1237, 1238 (1971). Second, some yacht-related expenditures were directly related to active conduct of petitioner's trade or business within the meaning of section 274(a) and section 1.274-2(c)(3), Income Tax Regs. In making this determination, we have counted as days of direct and active conduct of petitioner's trade or business those days that petitioner had aboard doctors, investment advisors, and the nurse who specifically benefited petitioner's business, and those days that petitioner planned business discussions with doctors but for reasons solely beyond his control they were unable to be aboard. Sec. 274(a) (2) (B); sec. 1.274-2(c) (3) (i), (ii) and (iii), Income Tax Regs. We have not counted those days that only hospital administrators were aboard since petitioner has not shown that he received any resulting specific trade or business benefit othe than general goodwill. Section 1.274-2(c) (3) (i), Income Tax Regs. In addition, we have found that section 1.274-2(c) (4) of the Income Tax Regulations, which *109 relates to expenditures made for entertainment occurring in a clear business setting, to be inapplicable. Also with respect to section 274(a), petitioner correctly distinguished Handelman v. Commissioner,509 F. 2d 1067 (2d Cir. 1975), revg. a Memorandum Opinion of this Court, because the boat logs and evidence in this case establish all days the yacht was used for business and personal purposes. A ratio of business and nonbusiness use can thus be ascertained in determining primary use of the yacht. Furthermore, petitioner actively initiated business conversations on his yacht and therefore Hippodrome Oldsmobile, Inc. v. United States,474 F. 2d 959, 965 (6th Cir. 1973), is distinguishable. Petitioner's reliance upon George Durgom,T.C. Memo. 1974-58, however, in contending that all yacht-related expenditures were directly related to his trade or business, is misplaced. In interpreting section 1.274-2(c) (3) (iv) of the Income Tax Regulations, which generally requires that an expenditure be allocable to taxpayer *110 and the person being entertained for business purposes, Durgom allowed full deduction of contested expenditures for days of business use as so allocable, even though nonbusiness guests also used the entertainment facility on those days. This Court determined, in effect, that the increment of expenditures allocable to nonbusiness guests was de minimis after depreciation and other expenditures had been first allocated to taxpayer and his business guests. The same result obtains herein: all depreciation and expenditures allocable to days the yacht was used to directly and actively conduct business within the meaning of section 1.274-2(c) (3) (i), (ii) and (iii), Income Tax Regs., are allocable to taxpayer and his business guests and thus fully deductible under section 274(a) and section 1.274-2(c) (3) (iv) and (d) (4), Income Tax Regs. But to allow full deductions for days of direct and active business conduct does not mean that the yacht was so used on all days, and petitioner's reliance on Durgom for the latter proposition is accordingly erroneous. Our findings as to particular days on which the yacht was used in direct and active conduct of petitioner's business are contained *111 in Appendix I. We now examine whether petitioner has also satisfied the rigorous substantiation requirements of section 274(d) for days the yacht was so used in direct and active conduct of petitioner's business. The first three elements which must be substantiated under section 274(d) -- amount, time, and place -- have been established by stipulation and the boat logs. One of the two remaining elements -- business relationship -- has been established by "adequate records" for all but three days because the occupation of the business guests, e.g. doctor, was recorded when guests signed the boat log. Sec. 1.274-5(b)(3)(v) and (c)(1), Income Tax Regs. No corroborative evidence was submitted, however, to establish by "sufficient evidence" the business relationship element for three days in issue, [2] and accordingly no deduction is allowable under section 274(d) for expenditures allocable thereto. The last substantiation element -- business purpose -- has not been established by "adequate records" because boat log entries made at or near the time of yacht use do not indicate whether patients or medical matters were discussed. *112 Sec. 1.274-5(c)(2)(ii), Income Tax Regs. "Sufficient evidence" has been submitted, however, to corroborate petitioner's credible and specific oral and written statements for certain days. Most corroboration was provided by petitioner's referral records, which establish that many patients had been or were later referred to petitioner by the doctorguests. Of course, such records are only corroborative for days those particular doctor-guests were aboard. John L. Ashby,supra at 416. Other corroboration was provided by depositions of two doctor-guests, although again the business purpose corroborated is limited to days those individuals were aboard. Imero O. Fiorentino,T.C. Memo. 1970-344, affd. 455 F. 2d 1406 (2d Cir. 1971). Direct testimony of petitioner's wife regarding the usual practice of petitioner and doctorguests of discussing patients aboard the yacht was too general to establish the business purpose element for any particular days. Nicholls, North, Buse Co.,supra at 1236. Otherwise, no corroborative evidence regarding the business purpose element was submitted. Petitioner relies, however, on *113 section 1.274-5(c)(2)(ii)(b), Income Tax Regs., which generally relaxes proof of business purpose "[where] the business purpose of an expenditure is evident from the surrounding facts and circumstances." Such reliance is misplaced, for we cannot agree that an invitation to go fishing on a yacht constitutes, under these facts, an evident business purpose. Our holding as to specific days petitioner has satisfied section 274(d) are contained in Appendix I. To summarize that Appendix, petitioner has satisfied the requirements of sections 162(a) and 274(a) and (d) for 13 out of 18, 22 out of 43, 19 out of 29, and 15 out of 27 days for 1966, 1967, 1968, and 1969, respectively. Since the amounts of depreciation, boat expense and promotion expense on boat in issue have been stipulated, with no proof submitted as to allocation of specific items to specific days, petitioner is entitled to deduct a proportionate part of each such amount in accordance with our findings. Thus, for example, petitioner is entitled to deduct 13/18ths of the depreciation, boat expense, and promotion expense on boat claimed for 1966. The *114 second issue is whether petitioner must recognize gain on the 1966 exchange of the Chris Craft for the Hatteras. Section 1245(a) provides in part that gain shall be recognized on exchange of certain depreciable property to the extent the amount realized exceeds adjusted basis. An exception, however, is found under section 1245(b)(4), the applicability of which depends upon in part section 1031. Section 1031(a) and section 1.1031(a)-1(c), Income Tax Regs., provide in part that no gain shall be recognized if property held for productive use in taxpayer's trade or business together with cash is exchanged solely for other property of like kind for the same use. As already determined, the Chris Craft and Hatteras were held for productive use in petitioner's trade or business. Thus, no gain is recognized on the yacht exchange under section 1031(a). Also, section 274(g), which provides in effect that property shall not be considered as held for productive use in taxpayer's trade *115 or business to the extent entertainment deductions are disallowed under section 274(a), is irrelevant on this point because we have found that all days of yacht use in 1966 satisfied section 274(a). Returning to the exception in section 1245(b)(4), that paragraph provides in relevant part that if section 1031 is applicable, gain otherwise recognizable under section 1245(a) shall not exceed gain recognized determined without regard to section 1245. Thus, no gain is recognized under section 1245(b)(4) since the amount of gain recognized without regard to section 1245(a) is zero under section 1031(a). We accordingly hold that petitioner did not recognize gain under section 1245 on the 1966 yacht exchange. The last issue is whether petitioner's yachts were "section 38 property" and thus whether investment credits thereon were proper. The term "section 38 property," defined in section 48(a), means in part tangible personal property with respect to which depreciation is allowable. Section 167(a) in *116 part provides that depreciation is allowable with respect to property used in a trade or business. Respondent contends that the Chris Craft ceased to be section 38 property in 1966 and therefore petitioner is subject to investment credit recapture under section 47, and that the Hatteras was not section 38 property when purchased in 1966 and therefore no investment credit thereon is allowable. The sole basis of respondent's position is that petitioner's yacht was not property used in a trade or business. As already determined, the Chris Craft and Hatteras were assets used in petitioner's trade or business, and that characterization is not altered by section 274(g) for 1966. The Chris Craft thus did not cease to be section 38 property in 1966 and we accordingly hold petitioner is not subject to investment credit recapture under section 47 for 1966. Petitioner is, however, subject to reductions in years subsequent to 1966 in the amount of investment credit claimed on the Hatteras since a portion of that property ceased to be section 38 property in later years by application of section 274(g). Sec. 1.47-2(e)(1), Income Tax Regs.
Decision will be entered *117 under Rule 155.
APPENDIX I
A = Days used B = Days used for Direct and Active Conduct of Business (Sec. 274(a)) C = Substantiation Elements Satisfied (Sec. 274(d)) 1966
1967
1968
1969 A
B
C
A
B
C
A
B
C
A
B
C
3/14
X
X
1/21
X
X
1/24
X
X
1/ 4
X
X
6/25
X
X
2/ 4
1/27
X
1/11
X
7/ 9
X
X
2/11
2/10
X
X
1/26
X
7/16
X
2/23
X
X
2/17
X
X
2/14
7/17
X
X
2/25
X
3/ 2
X
X
3/29
7/31
X
X
3/ 5
X
X
3/10
4/19
X
X
8/ 6
X
X
3/12
3/14
X
X
5/10
X
X
8/ 7
X
X
3/19
X
3/21
X
X
5/17
X
X
8/13
X
X
3/20
4/ 6
X
X
5/31
X
X
8/14
X
X
3/22
5/ 5
X
X
7/12
X
8/20
X
X
3/26
5/18
X
X
7/19
X
X
8/21
X
X
4/ 1
X
X
5/19
X
X
7/26
X
X
8/25
X
X
4/ 2
X
5/26
X
8/ 2
X
X
8/29
X
4/ 8
6/ 8
8/12
X
X
8/31
X
X
4/29
X
X
6/ 9
8/16
X
X
9/ 2
X
4/30
X
X
7/ 4
X
8/17
X
X
9/ 3
X
5/ 1
X
X
7/ 6
8/20
X
X
9/ 5
X
5/27
7/27
X
X
8/23
X
5/28
8/ 4
X
X
8/25
6/10
X
X
8/11
X
X
8/27
6/11
X
8/14
8/31
X
X
6/18
X
8/15
X
9/12
X
6/23
X
X
8/17
X
X
9/13
X
6/28
X
X
8/18
X
X
10/18
X
X
6/29
X
X
9/ 1
10/22
X
X
7/ 4
X
X
10/ 5
X
X
12/11
7/ 9
X
X
10/26
X
X
12/13
7/15
X
X
11/ 1
X
X
7/23
X
X
12/ 8
X
X
8/ 3
X
X
8/ 5
X
X
8/ 6
X
X
8/ 8
X
8/10
X
X
8/12
X
8/20
X
X
8/22
X
9/ 2
X
9/ 9
9/17
X
X
10/21
X
X
10/28
X
11/18
18
18
13
43
32
22
29
23
19
27
21
15
*118 Footnotes
1. Statutory references are to the Internal Revenue Code of 1954, as in effect during the years in issue.↩
2. August 29, 1966; August 8, 1967; January 27, 1968.↩