ROBERT LEE HENRY AND BETTY JANE HENRY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 71796. Filed August 25, 1961.

*Robert Lee Henry, Esq.*, pro se.
*Norman L. Rapkin, Esq.*, for the respondent.

DRENNEN, *Judge:* In this proceeding respondent determined a deficiency in income tax due from petitioners for the taxable year 1954 in the amount of $4,375.88.

The only issue for decision is whether petitioners are entitled to business deductions for the taxable year 1954, representing the expenses of maintenance and depreciation of a yacht during that year.

### FINDINGS OF FACT.

Petitioners were husband and wife, residing in New York, New York, during the year 1954. They filed a joint Federal income tax return for the taxable year 1954 with the district director of internal revenue, Upper Manhattan District of New York.

Robert Lee Henry, hereafter referred to as petitioner, is and was in 1954 a certified public accountant, licensed in the State of New York, and a member of the New York Bar. He is now a member of the Florida Bar. He belongs to the American Institute of Certified Public Accountants, the Bar Association of Nassau County, New York, and the Bar Association of Broward County, Florida. He is admitted to practice before this Court as well as before the United States District Courts for the Southern District of New York, the Eastern District of New York, and the Southern District of Florida. He has held a United States Treasury card for over 30 years. He has never been involved in any professional disciplinary action.

As a CPA and lawyer, petitioner developed into a tax specialist, but his law practice is not devoted solely to that specialty. He has

recently undertaken admiralty and probate work, and before that he developed a real estate practice.

In 1954, petitioner was employed by Powers Chemco, Inc., in Glen Cove, New York, at an annual salary of $10,400. In addition, he was a partner in a law partnership with offices in New York City, and a partner in a public accounting firm in Wilmington, Delaware.

Petitioner learned to ride horses at an early age. In 1938, when he could afford to, he bought a hunter and commenced going into competition. He did fairly well in competition and developed a clientele among others interested in riding. When petitioner returned from service in the Navy in 1945, he found that the Army had discontinued its horse show team and he organized the United States horse show civilian team.

Petitioner's activities with horses brought him into the horseracing field and his professional clientele now includes persons and corporations he has come in contact with in that field.

In 1953, petitioner had to give up active participation in riding. He bought a 26-foot boat, the *Bar Bill 1st*, in June 1953 for $6,600. On June 25, 1954, he bought *Bar Bill 2nd*, a 40-foot Wheeler. The cost of *Bar Bill 2nd*, including the trade-in allowance which he received for *Bar Bill 1st*, was $18,500. He traded in *Bar Bill 2nd* in June 1955 for a 46.6-foot shrimp boat called *North Star*.

When petitioner bought *Bar Bill 1st*, he hoped that he would be able to make contacts among yacht owners and that his professional clientele would consequently increase. Petitioner did not use the boat to entertain or transport existing or prospective clients or business contacts, nor to transport himself on business.

As a conversation piece, petitioner conceived of and adopted a house flag colored red, white, and blue and bearing the numerals "1040." The flag provoked inquiries, and petitioners and their son would reply to such inquiries by stating that petitioner was a CPA and a lawyer practicing as a tax specialist and that the numerals "1040" represented the form number of a Federal individual income tax return. Further opportunities to discuss business arose from these replies. Often these discussions concerned taxes.

In the years 1957 through 1960, petitioner had clients whom he had met as a result of his interest in boats.

In 1960, petitioner also had clients whom he had met as the result of his former activities with horses.

In August 1954, *Bar Bill 2nd* was damaged by a hurricane. Petitioner's insurance covered the repairs and the cost of these repairs is not part of the deductions claimed herein by petitioner. *Bar Bill 2nd* was used very little by petitioner from June 1954, when he bought it, until it was damaged by the hurricane. In about September 1954, petitioner's doctor advised him to stop work, rest, and relax, and to

take the usual precautions that accompany heart trouble from which petitioner had been suffering in 1954. By this time, *Bar Bill 2nd* was repaired and petitioner had a friend run his boat from New York to Florida. Petitioner and his son were aboard. The trip took 14 days, and petitioner and his son spent the winter of 1954 in Florida. In addition, when petitioner himself used *Bar Bill 2nd* in 1954, his family was sometimes aboard.

For the taxable year 1954, petitioner claimed on his income tax return the following expenses of operating *Bar Bill 2nd* as ordinary and necessary expenses of petitioner's trade or business:

| | |
|---|---:|
| Depreciation | $9,250.00 |
| Maintenance | 3,528.22 |
| Insurance | 651.08 |
| Total | 13,429.30 |

The foregoing expenses represent petitioner's computation of 100 percent of the expenses incurred in maintaining *Bar Bill 2nd* in 1954; he made no allocation of such expenses for personal use of the boat.

Petitioner has not shown that the expenses of maintaining *Bar Bill 2nd* in 1954, or any portion of such expenses, represented ordinary and necessary expenses of petitioner's trade or business. He has not shown that the acquisition and use of the boat was not primarily for personal purposes, or that the expenses of maintaining the boat in 1954, or any portion of such expenses, were proximately related to petitioner's trade or business.

No part of petitioner's expenses in maintaining a boat in 1954 is deductible as business expenses by petitioners for the taxable year 1954.

OPINION.

Petitioner is a certified public accountant and a lawyer. He is a specialist in the field of Federal taxation although his legal practice is not confined to that field. On his return for 1954, he claimed, as expenses of his business, deductions amounting to $13,429.30, representing depreciation, costs of maintenance, and insurance expense of a boat, *Bar Bill 2nd*. The total amount of these deductions has been disallowed by respondent, who contends that none of the expenses of maintaining the boat are ordinary and necessary to petitioner's trade or business and that, in any event, petitioner has not substantiated all of the expenses which he claims are deductible, although respondent agrees that certain expenditures were, in fact, made.

Petitioner maintains that his expenses incurred in connection with his boat were ordinary and necessary to his business in 1954. Although petitioner adduced evidence of these expenses at the hearing, he moved preliminarily that the Court rule that no issue of substantiation of expenses was involved in the case, since neither the explana-

tory paragraph of the statutory notice of deficiency nor respondent's answer made reference to substantiation of the deductions, which, argued petitioner, were disallowed solely on the grounds that they were not ordinary and necessary to petitioner's business.   The motion was taken under advisement and the parties discuss the point on brief.   In view of our holding that whatever expenses petitioner incurred in connection with *Bar Bill 2nd* in 1954 are not allowable business deductions, it is unnecessary to pass on petitioner's motion.

Petitioner bought his first boat, *Bar Bill 1st*, in June 1953 for $6,600. It was a 26-footer.   He traded this boat for the boat in controversy in June 1954.   Including the trade-in allowance, petitioner paid a total of $18,500 for *Bar Bill 2nd*.   In June 1955, he traded *Bar Bill 2nd* for a 46.6-foot shrimp boat, *North Star*.   He does not contend that *Bar Bill 2nd* was used for transportation in his business or that he needed it in order to entertain clients or prospective clients.   He contends that he bought and operated the boat strictly as a promotional scheme; he says that, restricted by professional ethics as certified public accountants and lawyers are, he had to publicize his "calling in a dignified and discreet manner"; and that operation of *Bar Bill 2nd* in 1954 "presented such a method of permissive advertising."   He has summarized his position succinctly:

I contend that I operated the boat in question as a promotion on the hope that rich clients might result—much the same as if I had purchased a full page advertisement in a class magazine announcing that I was for hire.

In support of this position, petitioner testified that he had come to appreciate the monetary value of sporting contacts before he went into yachting.   He learned to ride a horse as a boy and, according to his testimony, he learned very well.   In about 1938, he bought a hunter and engaged in competition, in which he did "fairly well." He fared better in his professional practice; soon he developed a clientele among the "horse people" most of whom "were rich—very rich" and had tax problems.   The horse activity led to "the racing field" and petitioner came to represent three important racing stables. However, in 1953, petitioner had to give up active participation in riding.   He "became concerned about acquiring a new source of business and as a result [he] determined to make the yachting group [his] next source of business activity."   To embark on this plan, he bought a boat in 1953 and later a larger boat, *Bar Bill 2nd*, in 1954, and began to build his contacts among yacht owners.   To attract attention, he flew a house flag colored red, white, and blue and bearing the numerals "1040."   As he hoped, other yacht owners did inquire about the meaning of the numbers on his flag.   Petitioner, his wife, and their son adopted a standardized reply to such inquiries; they explained that the numerals represented the number of an individual Federal income tax form and that petitioner specialized as

a tax specialist. Arising from this gambit was the opportunity to talk business. Petitioner says that results from these discussions have been good and that his engagements have not been limited to tax matters.

Petitioner maintains that he had some 25 clients at the date of hearing who had come to him as a result of his connections with horses. His estimate of the fees to be received in 1960 from those clients was $40,000. This estimate, he said, was on the lee side. His calculated plan of entree into the yachting fraternity has yielded tangible rewards, says petitioner; for example, some six clients had produced total fees of $1,993 in 1957, according to his evidence, although there was no evidence that he realized any income from this source prior to 1957.

On brief, both parties rely on *Welch* v. *Helvering*, 290 U.S. 111 (1933). Petitioner argues concisely that, by the rule of that case, what is "ordinary" to a taxpayer's trade or business is a "variable affected by time and place and circumstance," and that his evidence shows that the time, place, and circumstances under which he incurred the expenses in question prove them to be ordinary. Respondent contends that petitioner's claimed expenses were not "ordinary" according to conduct in the business world; that there is not the sufficient relationship between the expenses and the conduct of petitioner's practice to permit deduction under section 162 of the Internal Revenue Code of 1954;[1] and that the expenses smack of personal expenditures to be disallowed under section 262 of the 1954 Code.[2] Respondent argues further that petitioner's expenses were admittedly incurred in advertising in order to solicit clients and that such a purpose, being prohibited by the ethics of both of petitioner's professions, demonstrates that his expenses were not "ordinary." In this respect, however, it should be noted that respondent specifically disclaims argument that the claimed deductions are to be disallowed on the ground of a violation of clearly defined public policy.[3]

The question of whether the expenditures here involved qualify for deduction as ordinary and necessary expenses incurred in petitioner's trade or business is essentially one of fact. *Commissioner* v. *Heininger*, 320 U.S. 467 (1943); *James Schulz*, 16 T.C. 401 (1951);

---

[1] SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *

[2] SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES.

Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.

[3] In passing, two further points are to be noted. First, petitioner strongly denies that he violated the letter or the spirit of any provisions governing the ethics of either of his professions. Secondly, we do not reach this point of argument, and our holding herein is not in any way grounded upon a finding that petitioner's methods of promotion did or did not violate professional ethics.

*Louis Boehm,* 35 B.T.A. 1106 (1937). To prevail herein, petitioner must show that his expenditures incurred in maintenance of his yacht and the amount representing depreciation of the yacht in 1954 were both ordinary and necessary to the conduct of his activities as a lawyer and as a certified public accountant, within the scope of section 162 of the 1954 Code, the governing statutory provision. *McDonald* v. *Commissioner,* 323 U.S. 57 (1944); *Welch* v. *Helvering, supra.* Not only is it incumbent upon petitioner to show that the claimed business expenses do not in fact represent expenditures for primarily social or personal purposes, *Chas. D. Long,* 32 T.C. 511 (1959), affd. 277 F. 2d 239 (C.A. 8, 1960); *Richard A. Sutter,* 21 T.C. 170 (1953); *Louis Boehm, supra,* but it must appear that there is a proximate—rather than merely a remote or incidental—relationship between the claimed expenses and petitioner's practice as a lawyer and an accountant, *Alexander P. Reed,* 35 T.C. 199 (1960); *Ralph E. Larrabee,* 33 T.C. 838 (1960).

Applying these general principles to the instant question, petitioner has proved neither that the operation of his yacht in 1954 was "necessary" to his professional practice, in the sense that it was "appropriate and helpful," *Welch* v. *Helvering, supra, Louis Boehm, supra,* nor that it was "ordinary" in the sense that it was the "normal and natural response under the specific circumstances" in which petitioner found himself, *Donald G. Graham,* 35 T.C. 273 (1960). In determining that which is "necessary" to a taxpayer's trade or business, the taxpayer is ordinarily the best judge on the matter, and we would hesitate to substitute our own discretion for his with regard to whether an expenditure is "appropriate and helpful," in those cases in which he has decided to make the expenditure solely to serve the purposes of his business. See *Welch* v. *Helvering, supra.* But where, as in this case, the expenditures may well have been made to further ends which are primarily personal, this ordinary constraint does not prevail; petitioner must show affirmatively that his expenses were "necessary" to the conduct of his professions. See *Anthony E. Spitaleri,* 32 T.C. 988 (1959); *Chas D. Long, supra; Richard A. Sutter, supra.* We do not think petitioner has shown that the expenses of acquiring and maintaining a yacht were "necessary" to the conduct of his professions.

It appears that petitioner took up boating when, for reasons of health, he was forced to give up riding, an activity from which he obviously derived personal enjoyment and in which he was active. He has not shown that in 1954 he was not merely substituting one personal interest or sport for another as he operated his boat; he has not proved that he took up boating solely or even primarily to serve the needs of his practice or that he would not have operated *Bar Bill*

*2nd* regardless of whatever business advantages he hoped to derive from this sport.

In 1954, petitioner spent, by his evidence, the sum of $3,528.22 for maintenance of *Bar Bill 2nd*, and this amount is exclusive of depreciation. He stated that, for the first time in 1957, clients contacted through his yachting venture came to his offices. The total fees from these clients amounted to $1,993. For the year 1958, such fees totaled, according to petitioner, $758.[4] For 1954, 1955, and 1956, admittedly petitioner's yachting produced no fees. Although the fees attributed to boating contacts increased in 1959 and 1960, we believe that the claimed expenses, when considered in relation to the fees which petitioner attributes to yachting, are inordinate and do not indicate the requisite proximate relationship between his sporting activities and his business.

Furthermore, petitioner has failed to offer a single example by which any of the clients, who in general terms he claims were derived from boating contacts, happened to come to his firms. The record does not show exactly how, and under what circumstances, petitioner's boating activities produced a single fee. He stated the general manner by which he, his wife, and their son might get the chance to inform other owners of yachts of his professional activities: Inquiries about his "conversation piece," the pennant, produced the opportunity. The pennant may have had some relationship to the conduct of his business. But the evidence does not show how any specific fee resulted from his operating a yacht.

Nor do we think the expenses of acquiring and maintaining a yacht were "ordinary" expenses of petitioner's professions. Certainly in the common usage of the word it is not "ordinary" or usual for a lawyer or accountant to maintain a yacht for the promotion of his business. It is extremely doubtful, from a business standpoint, that the remotely possible future income that might be produced by this means would justify the expenditure. In fact, promotional and advertising expenses of any kind do not ordinarily appear in the profit and loss statements of either lawyers or accountants.

We recognize, as petitioner urges, that the business success of a lawyer or an accountant rests upon the clients who may seek his professional services. We recognize moreover that these clients often come from the contacts—business, social, personal, or political—which a professional person, for whatever purpose and by whatever means, may develop or cultivate. Petitioner further requests that we recognize the fact, which we do, that generally a professional person should broaden his contacts in the interests of his practice, although

---

[4] It is not clear whether these clients and the fees paid by them are attributable to petitioner's individual practices or to his partnerships.

the efforts may be long in producing tangible results. But were we to recognize that expenditures for normally personal pursuits become deductible business expenses simply because they afford contacts with possible future clients without showing a more direct relationship to the production of business income, it is evident that most all club dues and similar expenditures, for example, as well as the expense of appearing at the right place at the right time with the right people, could be claimed as ordinary and necessary business expense. Such would be an unwarranted extension of the scope of the deduction provision here involved. As we said in *Louis Boehm, supra* at 1109:

We do not think the burden of proof is met by the petitioner's argument that in general, membership in social, political, and fraternal organizations is helpful in obtaining clients through contacts made thereby * * *

The record does not convince us that the operation of petitioner's boat in 1954 was not for primarily personal ends, and that it was proximately related, and was ordinary and necessary, to petitioner's business. Petitioner argues that his points should be self-evident to any professional person. But it is not from a lack of appreciation of the economic realities of professional practice that we hold that nothing within the scope of judicial notice can compensate for the infirmities in petitioner's proof. *Welch* v. *Helvering, supra*. On the contrary, we cannot conceive how petitioner's "promotional" efforts in the manner which he has outlined were so closely related to the conduct of petitioner's business or business benefits expected as to have been "appropriate, helpful, usual, or necessary," see *Louis Boehm, supra;* or how such efforts "would enhance either his skill, usefulness, or reputation as a lawyer" or as an accountant. See *Long* v. *Commissioner*, 277 F. 2d 239 (C.A. 8, 1960), affirming *Chas. D. Long, supra*. The conclusion that the expenditures here involved were primarily related to petitioner's pleasure and only incidentally related to his business seems inescapable.

We conclude that the yacht expenses here involved are not deductible as ordinary and necessary expenses of carrying on petitioner's trade or business in the taxable year 1954.

*Decision will be entered for the respondent.*