ROBERT J. SIEBER and MARGARET C. SIEBER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sieber v. Commissioner
Docket No. 3517-77.
United States Tax Court
T.C. Memo 1979-15; 1979 Tax Ct. Memo LEXIS 509; 38 T.C.M. (CCH) 48; T.C.M. (RIA) 79015; January 9, 1979, Filed Robert C. Martin, for the petitioners. Juandell D. Glass, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined a deficiency of $ 3,995.05 in petitioners' income tax for 1973. The questions for decision are (1) whether costs incurred by petitioner in playing polo were ordinary and necessary business expenses and (2) if so, whether a deduction for such expenses is, nevertheless, *510 barred by section 274. [1]
FINDINGS OF FACT Some of the facts are stipulated and are found accordingly.
Petitioners are husband and wife who resided in Cincinnati, Ohio, during the taxable year in issue and at the time of filing the petition herein. They filed a joint Federal income tax return for 1973. Petitioner Robert J. Sieber (hereinafter "petitioner") had been a self-employed custom builder of homes and barns for approximately 20 years, operating under the name Sieber Construction Company (hereinafter the proprietorship). In 1973, petitioner also engaged in the construction business through his wholly owned corporation, Sieber Construction, Inc. (hereinafter the corporation), which handled Government contracts and jobs requiring union labor.Almost all of the work of the proprietorship and the corporation was done by subcontractors. In addition, petitioner owned 50 percent of the stock of Richwood Villa, Inc. in 1972, 1973, 1974 and, at least during 1973, was sole owner of Romar Villa, Inc. Both of these corporations were in the mobile *511 home park business. Petitioner devoted about 20 percent of his time to the activities of the proprietorship. In 1972, petitioner reported a net profit of $ 12,026.51 and in 1974 a net loss of $ 1,232.05 from the proprietorship. In 1973, he reported no income from that source. Other than what petitioner terms "advertising through polo," the proprietorship did not use any form of advertising in 1973 or prior to that time. In 1973, petitioner was the captain of the Queen City Polo Club. He had been playing polo for as long as he could remember. Other than petitioner, the members of the Queen City Polo Club in 1973 were petitioner's three sons, the son of the owner of the field on which the Polo Club played, and another man who served as trainer and sometimes played. Petitioner had introduced his sons to the game at a very early age. Petitioner's daughter helped the team by walking the horses and his wife prepared meals for the players. After the games, the players and the spectators often talked informally. Petitioner's costs of playing polo were in excess of $ 5,813.40 in 1972, $ 8,494.10 in 1973, and $ 6,643.85 in 1974. The Queen City Polo Club was very successful and *512 won the Mid-States League Championship in 1971, 1972, and 1973. Local newspapers gave some coverage to the Club in the course of which they occasionally mentioned that petitioner was a builder. John Stark met petitioner at an informal gathering of polo players some time prior to 1965. In 1965, petitioner participated in building a barn for Stark costing between $ 14,000 and $ 18,000. In the summer of 1971, petitioner participated in the remodeling of Stark's house at a cost to Stark between $ 30,000 and $ 40,000. Stark paid these amounts to the Sieber Construction Company. Edward Kennedy met petitioner around 1955 when a local polo team was organized. Petitioner participated in remodeling a house for Kennedy in 1959 or 1960 and in building a house for him in 1964 or 1965. In 1971, petitioner participated in building a home for Kennedy costing approximately $ 40,000 and in 1976 that home was remodeled for $ 4,000 or $ 5,000. Kennedy did not know whether these jobs were performed by the proprietorship or the corporation. Don Pansiera, an architect, met petitioner at a polo game in 1965. Between 1971 and 1975, Pansiera referred five building jobs to petitioner, involving *513 amounts ranging up to approximately $ 200,000. Pansiera relied on the fact that he was dealing with petitioner and did not know of the distinction between the proprietorship and the corporation. The corporation actually performed at least one of the largest jobs referred by Pansiera. Petitioner claimed a deduction in 1973 of $ 8,494.10 as the only expenses of his proprietorship, [2] representing depreciation of polo equipment and horses and the costs of feeding and maintaining the horses. Respondent disallowed the deduction. OPINION Petitioner claims that he is entitled to a *514 deduction under section 162 for the costs incurred in playing polo because polo enabled him to meet wealthy people who might require his services as a custom builder; thus, he contends, polo was a means of advertising his proprietorship. Respondent's position is that the costs of polo were not deductible because petitioner was not in the construction business as an individual in 1973, or if he was in such business, the costs were not ordinary and necessary business expenses, and in any event, were not substantiated as required by section 274.
We are satisfied that petitioner was in the construction business in 1973 whether or not he had any jobs in progress during that year. [3] Petitioner had been a builder for approximately 20 years. In the year preceding the taxable year in question, he had net profits from his sole proprietorship and in the year subsequent to the taxable year, he reported gross income from that source in excess of $ 35,000 although he reported a small net loss. A taxpayer may be considered as being in a trade or business in a year in which no income is received from that trade or business. Primuth v. Commissioner,54 T.C. 374, 378 (1970); Haft v. Commissioner,40 T.C. 2, 6 (1963). *515 Petitioner has the burden of proof that his costs of playing polo were ordinary and necessary expenses of that business under section 162. See Rule 142(a), Tax Court Rules of Practice and Procedure. To carry his burden, it is incumbent upon petitioner to show affirmatively that the expenditures were undertaken primarily for a business, not a social or personal, purpose and that there was a proximate, rather than merely a remote or incidental, relationship between the expenditures and petitioner's business -- essentially a question of fact. Henry v. Commissioner,36 T.C. 879, 884 (1961); Larrabee v. Commissioner,33 T.C. 838, 841 (1960). See also Schulz v. Commissioner,16 T.C. 401, 405 (1951). His burden is not made easier by the fact that the expenses involved are of a character which are normally personal and, therefore, may fall within the ambit of section 262, which *516 takes precedence over section 162. See Sharon v. Commissioner,66 T.C. 515, 522-523 (1976), affd. per curiam     F.2d     (9th Cir. 1978). We conclude that petitioner has not carried his burden of proof. The weight of the evidence strongly suggests that petitioner played polo primarily because it gave him personal satisfaction and helped him maintain a close relationship with his family. Every member of his family participated in the sport in one way or another -- his sons were team members, his wife prepared food for the players, his daughter walked the horses. We simply are not convinced that petitioner actively engaged in a strenuous sport for over 20 years, and involved his entire family in that sport, primarily for the purpose of advertising his proprietorship.Petitioner himself, in a newspaper interview, described polo as a hobby that was good for his family and we think that this is an accurate description. Expenditures for such personal pursuits are not deductible. Compare Rodgers Dairy Co. v. Commissioner,14 T.C. 66, 73 (1950), with Henry v. Commissioner,supra at 884-885. [4]
*517 Petitioner did virtually nothing to assure that those attending the polo games were made aware of the services his proprietorship had to offer. See Schulz v. Commissioner,supra at 407. [5] Two of petitioner's own witnesses did not know whether they had dealt with the corporation or the proprietorship. In 1974, when a polo club program was published, petitioner did not even advertise the proprietorship in it, although the corporation and the two mobile home parks corporations did advertise. The publicity petitioner received was personal, promoting petitioner as a sportsman, not a builder, and it included only insignificant references to his business. [6] The cases in which we have found that expenditures for activities usually considered recreational, constituted legitimate advertising expenses are distinguishable because the taxpayers therein made extensive efforts to link the recreational activity with their business in the minds of potential customers through trademarks, signs, displays, and various promotional schemes. Sanitary Farms Dairy, Inc. v. Commissioner,25 T.C. 463 (1955); Rodgers Dairy Co. v. Commissioner,supra. *518 [7]
At most, petitioner has shown that he developed some friendships, which he would not otherwise have had through playing polo, and thereby obtained, either for his proprietorship or the corporation, some business which he would not have obtained but for having played polo. However, without a showing of a more direct connection between a recreational activity and a taxpayer's business, expenditures for personal pursuits are not deductible business expenses merely because they afford contacts which lead to some business income. An incidental or remote benefit to petitioner's proprietorship does not provide the nexus essential to a determination that an expenditure is a deductible business expense. Larrabee v. Commissioner,33 T.C. at 843; Henry v. Commissioner,36 T.C. at 885. [8] Otherwise, "the expense of appearing *519 at the right place at the right time with the right people, could be claimed as ordinary and necessary business expense." Henry v. Commissioner, 36 T.C. at at 886. We also note that petitioner's polo expenses were high in comparison to the income of the proprietorship. From 1972 to 1974, the total reported net profits of the proprietorship were $ 10,794.46 while petitioner expended more than $ 20,951.35 for polo during that period. It is doubtful that, from a business standpoint, such expenditures would be justified. Such circumstance also tends to indicate that the requisite proximate relationship between polo and the petitioner's business did not exist. Henry v. Commissioner,36 T.C. at 885. See also Rodgers Dairy Co. v. Commissioner,supra at 73. Petitioner's position is further undermined by the fact that many of the fees that he claimed that his proprietorship earned because of contracts he *520 made at polo either were not earned by the partnership or were not the result of contacts made at a polo game. At least half of the fees petitioner alleged resulted from playing polo between 1972 and 1974 were actually earned by the corporation, not the proprietorship. Of the remaining half of the fees that petitioner claimed stemmed from polo, 70 percent were paid by Richwood Villa, Inc. We cannot understand how petitioner can claim that jobs done by him for a corporation in which he had a 50-percent interest were obtained as the result of advertising. Based upon the entire record herein and our evaluation of the testimony of the witnesses, whom we saw and heard, we cannot find that polo playing was reasonably expected to attract business to the proprietorship. Sanitary Farms Dairy, Inc., v. Commissioner,supra;Schulz v. Commissioner, 16 T.C. at 885. [9] Petitioner is not entitled to deduct, under section 162, any costs incurred by him in playing polo. Having reached this conclusion, we need not consider the applicability of section 274 to this case. *521 Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year in issue.↩
2. Petitioner erroneously reported his polo expenses as "cost of obtaining contracts" on Form 2106 (Employee Business Expenses) of his 1973 income tax return because he did not file Form 1040 Schedule C (Profit (or Loss) From Business or Profession) in 1973. Petitioner does not assert that the polo expenses were of any benefit to the corporations by which he was employed. Thus, this is not a case of an employee attempting to deduct business expenses of his corporate employer. Compare Brown v. Commissioner,446 F.2d 926↩ (8th Cir. 1971), affg. a Memorandum Opinion of this Court.
3. The absence of any reported income from the proprietorship in 1973 may be explainable on the basis of petitioner's claim that he reported his construction jobs on a completed contract basis. The record is unclear as to whether this in fact was the case.↩
4. Compare also U.S. Equipment Co. v. Commissioner,T.C. Memo. 1963-261, with Barber v. Commissioner,T.C. Memo. 1972-56↩.
5. See also, W. D. Gale, Inc. v. Commissioner, T.C. Mmo. 1960-191, affd. 297 F.2d 270↩ (6th Cir. 1961). 6. See W.D. Gale, Inc. v. Commissioner, footnote 5, supra; Burrous v. Commissioner,T.C. Memo. 1977-364↩. 7. See also, U.S. Equipment Co. v. Commissioner, footnote 4, supra↩.
8. See also, Burrous v. Commissioner, footnote 6, supra; Eckel v. Commissioner,T.C. Memo. 1974-33; Barber v. Commissioner, footnote 4, supra; W. D. Gale, Inc. v. Commissioner, footnote 5, supra.↩
9. See also, W. D. Gale, Inc. v. Commissioner, footnote 5, supra.↩ Petitioner's general testimony that, by the time of the trial herein, he had ceased playing polo because of a change in the nature of his business activities is totally insufficient to overcome the numerous other elements in the record which so strongly indicate that his polo playing expenses were personal.