T.C. Memo. 2005-49


UNITED STATES TAX COURT


MICHAEL P. AND PAMELA J. HOPKINS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 7551-03.               Filed March 17, 2005.


<u>Daniel J. Cooper</u>, for petitioners.

<u>Karen Nicholson Sommers</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, <u>Judge</u>:  Respondent determined a deficiency of

$51,643 in, and an accuracy-related penalty of $10,328.60 under

section 6662(a)[1] on, petitioners' Federal income tax (tax) for

---

[1]All section references are to the Internal Revenue Code in
effect for the year at issue.  All Rule references are to the Tax
Court Rules of Practice and Procedure.

1999.

The issues remaining for decision are:

(1) Are petitioners entitled for 1999 to deductions with respect to a sole proprietorship of petitioner Michael P. Hopkins (Mr. Hopkins) in excess of the deductions allowed by respondent? We hold that they are not.

(2) Should we sustain respondent's determination to disallow a nonpassive loss that petitioners claimed in Schedule E of their 1999 tax return as attributable to an S corporation owned by Mr. Hopkins? We hold that we should.

(3) Are petitioners liable for 1999 for the accuracy-related penalty under section 6662(a)? We hold that they are.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Petitioners resided in Dana Point, California, at the time they filed the petition in this case.

From around 1965 until around 1979, Mr. Hopkins, who has a bachelor of science degree in mechanical engineering, worked as an engineer for Goodyear Tire and Rubber Company (Goodyear). In 1979, Mr. Hopkins left Goodyear and worked for a small tire company in Indiana. In 1980, Mr. Hopkins began working in Illinois and thereafter in California as a salesman for NRM Corporation, a company that sold rubber and plastic extrusion equipment to the tire industry and the plastics industry.

During the period (1965-1979) he worked for Goodyear, Mr. Hopkins, who participated in drag racing as a teenager, frequently attended automobile races. In 1980, Mr. Hopkins stopped frequenting such races. In 1985, he resumed attending automobile races, frequenting about 8 to 10 races a year. In at least 1999, the year at issue, Mr. Hopkins attended automobile races in different places throughout the United States, including Arizona, California, Indiana, Kentucky, Pennsylvania, and Texas.

From 1982 until around mid-June 1999, Mr. Hopkins, operating as a sole proprietor under the name MPH Enterprises (Mr. Hopkins's sole proprietorship), sold on behalf of certain manufacturers, including Westchem, Inc. (Westchem), various plastics products and equipment used in the medical profession and the construction industry. In return for such services, Mr. Hopkins received sales-based commissions from such manufacturers. During approximately the first 5½ months of 1999, Mr. Hopkins's sole proprietorship sold on behalf of Westchem certain Westchem plastics products that resulted in (1) sales commissions to that sole proprietorship of an unspecified amount that was less than $128,610[2] and (2) approximately $2.5 million of gross sales to

---

[2]As discussed below, petitioners reported that during 1999 Mr. Hopkins's sole proprietorship had $128,610 of gross receipts (i.e., sales commissions). Westchem was not the only customer of Mr. Hopkins's sole proprietorship, and the record does not disclose the amount of gross receipts (i.e., sales commissions) that Mr. Hopkins's sole proprietorship received from its other

(continued...)

Westchem.

During approximately the first 5½ months of 1999, Mr. Hopkins made certain unidentified expenditures totaling $10,179 (Mr. Hopkins's unidentified expenditures of $10,179). During the period January through June 7, 1999, Mr. Hopkins made certain automobile racing expenditures totaling $67,084 (Mr. Hopkins's automobile racing expenditures of $67,084) to pay for, inter alia, purchasing a race car, race car graphics, signs, and clothes, making sponsorship payments to certain race car drivers, and Mr. Hopkins's airfare, lodging, meals, and other costs that he incurred while he was frequenting various automobile races.

On June 15, 1999, Mr. Hopkins organized and became the sole stockholder of a corporation also known as MPH Enterprises, which took over the operations of Mr. Hopkins's sole proprietorship. On the same date, that corporation filed an election to be taxed as an S corporation. (Hereinafter, we shall refer to the corporation known as MPH Enterprises as Mr. Hopkins's S Corporation.)

Approximately 90 percent of the manufacturers for whom Mr. Hopkins's S Corporation sold plastics products or equipment, including Westchem, were located in California. During approximately the second half of 1999, Mr. Hopkins's S Corporation sold on behalf of Westchem certain Westchem plastics products that

---

[2](...continued)
customers.

resulted in (1) sales commissions to that S corporation of an unspecified amount that was less than $87,249[3] and (2) approximately $2.5 million of gross sales to Westchem.

During approximately the second half of 1999, Mr. Hopkins's S Corporation made certain expenditures totaling $16,501 (Mr. Hopkins's S Corporation's expenditures of $16,501) that consisted of loan payments of $9,609 with respect to Mr. Hopkins's motor home, certain unidentified automobile racing expenditures of $6,620 (Mr. Hopkins's S Corporation's unidentified automobile racing expenditures of $6,620), and certain advertising (hats) expenditures of $282.[4]  During the same period, Mr. Hopkins's S Corporation made certain additional expenditures totaling $39,557 (Mr. Hopkins's S Corporation's expenditures of $39,557) that consisted of sponsorship payments of $39,000 to race car driver Davey Hamilton (sponsorship payments to Mr. Hamilton of $39,000) and payments of $557 for country club dues (country club dues payments of $557).  Sponsorship payments to a race car driver,

---

[3]As discussed below, Mr. Hopkins's S Corporation reported that during 1999 it had $87,249 of gross receipts (i.e., sales commissions).  Westchem was not the only customer of Mr. Hopkins's S Corporation, and the record does not disclose the amount of gross receipts (i.e., sales commissions) that Mr. Hopkins's S Corporation received from its other customers.

[4]The parties stipulated that Mr. Hopkins's S Corporation's expenditures of $16,501 consisted of the amounts set forth above.  However, those amounts total $16,511.  There is no explanation in the record for this discrepancy.  We shall use the total amount stipulated by the parties.

like the sponsorship payments to Mr. Hamilton of $39,000, entitled the sponsor (1) to have (a) a decal with the sponsor's logo displayed on any race car that such driver drove and (b) its name displayed on such driver's racing uniforms and helmets and (2) to require such driver to mention the sponsor's name if and when asked about his sponsors. The size and the location of the logo and the name of a sponsor depended on the amount of the sponsorship payment that such sponsor made to the race car driver.

Some time during 1999, Mr. Hopkins received a capital gains distribution of $88,254 ($88,254 capital gains distribution) from a family limited partnership that his deceased father had formed. Around that same time, Mr. Hopkins received a taxable distribution of $204,002 ($204,002 profit-sharing plan distribution) from his deceased father's profit-sharing plan.

Mr. Hopkins's S Corporation filed Form 1120S, U.S. Income Tax Return for an S Corporation (1999 Form 1120S), for its short taxable year that began on June 22, 1999, and ended on December 31, 1999. In the 1999 Form 1120S, Mr. Hopkins's S Corporation reported, inter alia, gross receipts of $87,249. In that form, Mr. Hopkins's S Corporation deducted, inter alia, (1) Mr. Hopkins's S Corporation's expenditures of $16,501 as advertising expenses and (2) Mr. Hopkins's S Corporation's expenditures of $39,557 as promotional expenses. In the 1999 Form 1120S, Mr. Hopkins's S Corporation claimed an ordinary loss of $36,066 (Mr.

Hopkins's S Corporation's claimed 1999 ordinary loss of $36,066).

Petitioners jointly filed Form 1040, U.S. Individual Income Tax Return (1999 joint return), for their taxable year 1999. Petitioners' 1999 joint return reported, inter alia, the $88,254 capital gains distribution and the $204,002 profit-sharing plan distribution. Petitioners' 1999 joint return included two Schedules C, Profit or Loss From Business (Schedule C). One such schedule (Mr. Hopkins's sole proprietorship's Schedule C) related to Mr. Hopkins's sole proprietorship known as MPH Enterprises. That Schedule C reported $128,610 of gross receipts, claimed Mr. Hopkins's unidentified expenditures of $10,179 as an advertising expense deduction, and showed a net profit of $44,219.

In Schedule E, Supplemental Income and Loss (Schedule E), included as part of petitioners' 1999 joint return (petitioners' Schedule E),[5] petitioners claimed, inter alia, a nonpassive loss of $103,150 from Mr. Hopkins's S Corporation and a total loss of $83,872.[6] The nonpassive loss of $103,150 from Mr. Hopkins's S Corporation claimed in petitioners' Schedule E was equal to the sum of (1) Mr. Hopkins's S Corporation's claimed 1999 ordinary

[5]Petitioners' Schedule E was incomplete in that it consisted of only one page.

[6]Petitioners determined the total loss claimed in petitioners' Schedule E by reducing (1) the total of the respective nonpassive losses that they claimed in that schedule from Mr. Hopkins's S Corporation and another S corporation by (2) the nonpassive income that they reported in that schedule from a limited partnership.

loss of $36,066[7] and (2) Mr. Hopkins's automobile racing expenditures of $67,084 that petitioners claimed as "advertising and business promotion" in Statement SBE, Supplemental Business Expenses (Statement SBE), included as part of their 1999 joint return. In Statement SBE, petitioners indicated that Mr. Hopkins incurred Mr. Hopkins's automobile racing expenditures of $67,084 as an "S Corporation Shareholder".

Respondent conducted examinations of Mr. Hopkins's S Corporation's 1999 Form 1120S and petitioners' 1999 joint return. With respect to the examination of the 1999 Form 1120S, respondent determined, inter alia, to disallow $12,729, and to allow $3,772 as advertising expenses, of Mr. Hopkins's S Corporation's expenditures of $16,501 that Mr. Hopkins's S Corporation claimed as a deduction in that form.[8] Respondent also determined to

---

[7]In determining the amount of Mr. Hopkins's S Corporation's claimed 1999 ordinary loss of $36,066 reported in the 1999 Form 1120S, Mr. Hopkins's S Corporation deducted from its gross receipts reported in that form, inter alia, Mr. Hopkins's S Corporation's expenditures of $16,501 and Mr. Hopkins's S Corporation's expenditures of $39,557.

[8]Of the total of Mr. Hopkins's S Corporation's expenditures of $16,501 that were claimed as a deduction in Mr. Hopkins's S Corporation's 1999 Form 1120S, respondent (1) disallowed (a) $9,609 as nondeductible loan payments with respect to Mr. Hopkins's motor home and (b) $3,130 of Mr. Hopkins's S Corporation's unidentified automobile racing expenditures of $6,620 as nondeductible personal automobile racing expenditures of Mr. Hopkins and (2) allowed (a) $3,490 of such unidentified automobile racing expenditures and (b) $282 of advertising (hats) expenditures (or a total of $3,772) as advertising expenses. Respondent determined the former amount allowed (i.e., $3,490) as
(continued...)

disallow the entire amount of Mr. Hopkins's S Corporation's expenditures of $39,557 that Mr. Hopkins's S Corporation claimed as a deduction in the 1999 Form 1120S.[9] As a result of respondent's disallowance of various deductions, including the above-specified deductions, respondent determined that for taxable year 1999 Mr. Hopkins's S Corporation had ordinary income of $26,885,[10] and not an ordinary loss of $36,066 as claimed in the 1999 Form 1120S.

Respondent issued to petitioners a notice of deficiency (notice) for their taxable year 1999. In that notice, respondent, inter alia, disallowed $5,035, and allowed $5,144,[11] of Mr.

---

[8](...continued)
4 percent of the $87,249 of gross receipts reported in Mr. Hopkins's S Corporation's 1999 Form 1120S.

[9]Respondent disallowed $557 of Mr. Hopkins's S Corporation's expenditures of $39,557 as nondeductible country club dues and the balance of such expenditures as nondeductible personal automobile racing expenditures of Mr. Hopkins. Respondent made that latter determination because respondent had allowed Mr. Hopkins's S Corporation an advertising expense deduction of $3,490 (i.e., 4 percent of the $87,249 of gross receipts reported in its 1999 Form 1120S). See supra note 8.

[10]The parties stipulated that, as a result of respondent's disallowance of various deductions, respondent determined that Mr. Hopkins's S Corporation had ordinary income of $26,885 for 1999. However, respondent's disallowance of various deductions claimed in the 1999 Form 1120S results in Mr. Hopkins's S Corporation's having ordinary income of $26,685. There is no explanation in the record for this discrepancy. We shall use the amount of ordinary income stipulated by the parties.

[11]The amount of Mr. Hopkins's unidentified expenditures of $10,179 that respondent determined in the notice to allow (i.e.,
(continued...)

Hopkins's unidentified expenditures of $10,179 that petitioners claimed as advertising expenses in Mr. Hopkins's sole proprietorship's Schedule C.[12] Based upon respondent's examination of Mr. Hopkins's S Corporation's 1999 Form 1120S, respondent also disallowed in the notice the nonpassive loss of $103,150 from Mr. Hopkins's S Corporation that petitioners claimed in petitioners' Schedule E.[13] Respondent further determined in the notice that petitioners are liable for 1999 for the accuracy-related penalty under section 6662(a).

OPINION

The parties do not address section 7491(a). Since the year at issue is 1999, we presume that section 7491(a) is applicable in the instant case. On the record before us, we find that petitioners have failed to carry their burden of establishing that they satisfy the applicable requirements of section

---

[11](...continued)
$5,144) is equal to approximately 4 percent of the $128,610 of gross receipts reported in Mr. Hopkins's sole proprietorship's Schedule C.

[12]Petitioners concede, inter alia, respondent's determination to disallow in the notice certain deductions claimed in Mr. Hopkins's sole proprietorship's Schedule C, including the disallowance of $5,035 of Mr. Hopkins's unidentified expenditures of $10,179.

[13]As discussed above, the nonpassive loss of $103,150 from Mr. Hopkins's S Corporation claimed in petitioners' Schedule E was equal to the sum of (1) Mr. Hopkins's S Corporation's claimed 1999 ordinary loss of $36,066 and (2) Mr. Hopkins's automobile racing expenditures of $67,084 claimed in Statement SBE included as part of petitioners' 1999 joint return.

7491(a)(2) with respect to the factual issues relevant to ascertaining petitioners' tax liability for 1999 that remain in this case. On that record, we conclude that petitioners' burden of proof on such issues, see Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933), does not shift to respondent under section 7491(a). Moreover, with respect to any deductions that petitioners are claiming for 1999, deductions are strictly a matter of legislative grace, and petitioners bear the burden of proving that they are entitled to any deductions claimed. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

It is now petitioners' position that for 1999 they are entitled under section 162(a) to deduct as advertising expenses in Mr. Hopkins's sole proprietorship's Schedule C an unspecified reasonable amount of Mr. Hopkins's automobile racing expenditures of $67,084.[14] (For convenience, we shall sometimes refer to such claimed deduction as Mr. Hopkins's claimed Schedule C deduction of $67,084.) It is also petitioners' position that respondent's determination that for 1999 Mr. Hopkins's S Corporation has $26,885 of ordinary income that must be reported in petitioners' Schedule E is wrong. That is because, according to petitioners,

---

[14]At trial, Mr. Hopkins conceded that during the first six months of 1999, before Mr. Hopkins's S Corporation was organized, he made Mr. Hopkins's automobile racing expenditures of $67,084. We conclude that petitioners have conceded that they erroneously included such automobile racing expenditures as part of the nonpassive loss of $103,150 from Mr. Hopkins's S Corporation claimed in petitioners' Schedule E.

for 1999 Mr. Hopkins's S Corporation is entitled under section 162(a) to deduct (1) as advertising expenses an unspecified reasonable amount of Mr. Hopkins's S Corporation's expenditures of $16,501 in excess of the amount of such expenditures (i.e., $3,772) that respondent allowed that S Corporation to deduct[15] and (2) as promotional expenses an unspecified reasonable amount of Mr. Hopkins's S Corporation's expenditures of $39,557.[16]  We shall address hereinafter the additional deductions for 1999 to which petitioners claim Mr. Hopkins's S Corporation is entitled, and not the correlative effect in petitioners' Schedule E that

---

[15]With respect to Mr. Hopkins's S Corporation's expenditures of $16,501, respondent allowed advertising expense deductions for (1) $3,490 of unidentified automobile racing expenditures and (2) $282 of advertising (hats) expenditures (or a total of $3,772). Petitioners presented no evidence and make no argument with respect to, and do not otherwise appear to challenge, $9,609 of the disallowed amount of Mr. Hopkins's S Corporation's expenditures of $16,501, which the parties stipulated was for loan payments with respect to petitioners' motor home.  See supra note 8.  We conclude that petitioners have abandoned contesting that disallowed amount.  We further conclude that petitioners are contesting only $3,130 of Mr. Hopkins's S Corporation's expenditures of $16,501.  For convenience, we shall sometimes refer to such contested amount as Mr. Hopkins's S Corporation's claimed advertising expense deduction of $3,130.

[16]With respect to Mr. Hopkins's S Corporation's expenditures of $39,557, petitioners presented no evidence and make no argument with respect to, and do not otherwise appear to challenge, $557 of such expenditures, which respondent disallowed as, and which the parties stipulated was for, country club dues.  See supra note 9.  We conclude that petitioners have abandoned contesting the disallowed country club dues payments of $557.  We further conclude that petitioners are contesting only $39,000 of Mr. Hopkins's S Corporation's expenditures of $39,557.  For convenience, we shall sometimes refer to such contested amount as Mr. Hopkins's S Corporation's claimed promotional expense deduction of $39,000.

would result if we were to allow all or a portion of such claimed deductions. (For convenience, we shall sometimes refer collectively to the respective deductions that petitioners are claiming with respect to Mr. Hopkins's sole proprietorship and with respect to Mr. Hopkins's S Corporation as the deductions at issue.)

To establish entitlement to the deductions at issue, petitioners rely on, inter alia, Mr. Hopkins's testimony and certain documents and a photograph. With respect to the testimony of Mr. Hopkins, based on our observation of his demeanor, we did not find him to be credible. In addition, we found Mr. Hopkins's testimony to be general, conclusory, vague, and/or uncorroborated in certain material respects. We shall not rely on Mr. Hopkins's testimony to establish entitlement to the deductions at issue.

With respect to the documents and the photograph on which petitioners rely, we find that those documents and that photograph do not establish entitlement to the deductions at issue.

In support of their position with respect to Mr. Hopkins's claimed Schedule C deduction of $67,084, petitioners argue that it is appropriate under section 162(a) to compare Mr. Hopkins's automobile racing expenditures of $67,084 to the amount of gross sales of Westchem (i.e., approximately $2.5 million) during the first six months of 1999 that were attributable to the sales efforts of Mr. Hopkins's sole proprietorship. In support of

their position with respect to Mr. Hopkins's S Corporation's claimed advertising expense deduction of $3,130 and Mr. Hopkins's S Corporation's claimed promotional expense deduction of $39,000, petitioners argue that it is appropriate under section 162(a) to compare the respective amounts of (1) the advertising expenses giving rise to Mr. Hopkins's S Corporation's claimed advertising expense deduction of $3,130 and (2) the promotional expenses giving rise to Mr. Hopkins's S Corporation's claimed promotional expense deduction of $39,000 to the amount of gross sales of Westchem (i.e., approximately $2.5 million) during the last six months of 1999 that were attributable to the sales efforts of Mr. Hopkins's S Corporation.[17]  (For convenience, we shall sometimes refer to petitioners' argument regarding the respective comparisons to be made in determining entitlement to the deductions at issue as petitioners' comparison argument.)

Respondent counters that the Court should reject petitioners' comparison argument and that the Court should not allow the

---

[17]To support entitlement to the deductions at issue, petitioners also offered the testimony of George Fague (Mr. Fague). Mr. Fague, who formed Westchem around 1983 and who at the time of the trial in this case was its CEO, testified that Westchem relied on its sales representatives, including Mr. Hopkins's sole proprietorship and Mr. Hopkins's S Corporation, to conduct certain promotional activities.  In addition, Mr. Fague testified that "MPH Enterprises is one of our [Westchem's] top performing rep organizations".  We find that Mr. Fague's testimony does not establish entitlement to the deductions at issue.

deductions at issue.[18]

Section 162(a) generally allows a deduction for ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. The determination of whether an expense satisfies the requirements for deductibility under that section is a question of fact. Commissioner v. Heininger, 320 U.S. 467, 475 (1943); Hearn v. Commissioner, 309 F.2d 431 (9th Cir. 1962), affg. 36 T.C. 672 (1961).

In general, an expense is ordinary if it is considered normal, usual, or customary in the context of the particular business out of which it arose. Deputy v. du Pont, 308 U.S. 488, 495-496 (1940). In general, an expense is necessary if it is appropriate and helpful to the taxpayer's trade or business. Commissioner v. Tellier, 383 U.S. 687, 689 (1966); Carbine v. Commissioner, 83 T.C. 356, 363 (1984), affd. 777 F.2d 662 (11th Cir. 1985).

In determining whether an expense is ordinary and necessary

---

[18]The respective amounts of advertising and/or promotional expense deductions that respondent allowed Mr. Hopkins's sole proprietorship and Mr. Hopkins's S Corporation were calculated as approximately 4 percent of the respective gross receipts of those businesses. We reject any suggestion by respondent that approximately 4 percent of the gross receipts of a taxpayer's business is the standard to be used in deciding whether the amount of an advertising or promotional expenditure is reasonable under sec. 162(a). We have previously indicated that "we did not intend to create a rule of thumb for determining whether a certain level of expenditure was reasonable or unreasonable" under that section. Gill v. Commissioner, T.C. Memo. 1994-92, affd. without published opinion 76 F.3d 378 (6th Cir. 1996).

within the meaning of section 162(a), courts generally have focused on the existence of a reasonably proximate relationship between the expense and the taxpayer's business and the primary motive or purpose for incurring it.  E.g., <u>Greenspon v. Commissioner</u>, 229 F.2d 947, 954-955 (8th Cir. 1956), affg. on this issue 23 T.C. 138 (1954); <u>Henry v. Commissioner</u>, 36 T.C. 879, 884 (1961); <u>Larrabee v. Commissioner</u>, 33 T.C. 838, 841-843 (1960). In general, where an expense is primarily associated with profit-motivated purposes, and personal benefit can be said to be distinctly secondary and incidental, it may be deducted under section 162(a).  E.g., <u>Intl. Artists, Ltd. v. Commissioner</u>, 55 T.C. 94, 104 (1970); <u>Sanitary Farms Dairy, Inc. v. Commissioner</u>, 25 T.C. 463, 467-468 (1955); <u>Rodgers Dairy Co. v. Commissioner</u>, 14 T.C. 66, 73 (1950).  Conversely, if an expense is primarily motivated by personal considerations, no deduction for it will be allowed under section 162(a).  E.g., <u>Henry v. Commissioner</u>, <u>supra</u>; <u>Larrabee v. Commissioner</u>, <u>supra</u>.  A taxpayer's general statement that his or her expenses were incurred in pursuit of a trade or business is not sufficient to establish that the expenses had a reasonably direct relationship to any such trade or business.  <u>Ferrer v. Commissioner</u>, 50 T.C. 177, 185 (1968), affd. per curiam 409 F.2d 1359 (2d Cir. 1969).

Even if "An expenditure may be, by its nature, ordinary and necessary, * * * at the same time it may be unreasonable in

amount.  In such a case only the portion which was reasonable would qualify for a deduction under § 162(a)."  United States v. Haskel Engg. & Supply Co., 380 F.2d 786, 788-789 (9th Cir. 1967).

We turn now to petitioners' comparison argument.  Petitioners do not cite, and we have not found, any authority supporting that argument.[19]  In determining under section 162(a) whether an advertising or promotional expenditure incurred by a taxpayer who performs services on behalf of another taxpayer is reasonable or unreasonable in amount, it may be appropriate, inter alia, to compare such expenditure to the gross receipts of the taxpayer performing such services.  We conclude that in this case it would be inappropriate in making such a determination to compare the advertising or promotional expenditure of the taxpayer performing services on behalf of another taxpayer to the gross receipts of such other taxpayer.  We reject petitioners' comparison argument.

In advancing their position with respect to the deductions at issue, petitioners fail to specify the amount of Mr. Hopkins's claimed Schedule C deduction of $67,084, which when added to the $5,144 of advertising expenses that respondent allowed as a deduction, is reasonable under section 162(a).[20]  Petitioners

---

[19]None of the cases on which petitioners rely supports petitioners' comparison argument.  See, e.g., United States v. Haskel Engg. & Supply Co., 380 F.2d 786, 788-789 (9th Cir. 1967); Gill v. Commissioner, supra; Boomershine v. Commissioner, T.C. Memo. 1987-384; Brallier v. Commissioner, T.C. Memo. 1986-42.

[20]The record does not permit us to estimate any such amount.
(continued...)

also fail to specify the respective amounts of Mr. Hopkins's S Corporation's claimed advertising expense deduction of $3,130 and Mr. Hopkins's S Corporation's claimed promotional expense deduction of $39,000, which when added to the $3,772 of advertising and promotional expenses that respondent allowed Mr. Hopkins's S Corporation as a deduction, are reasonable under section 162(a).[21]

Based upon our examination of the entire record in this case, we find that petitioners have failed to carry their burden of establishing that Mr. Hopkins's sole proprietorship and Mr. Hopkins's S Corporation are entitled for 1999 to any advertising and/or promotional expense deductions under section 162(a) in excess of the respective advertising and/or promotional expense deductions that respondent allowed those businesses.

We turn next to the determination in the notice that petitioners are liable for 1999 for the accuracy-related penalty under section 6662(a). Respondent determined that petitioners are liable for that penalty because of: (1) Negligence or disregard of rules or regulations under section 6662(b)(1) or (2) a substantial understatement of tax in petitioners' 1999 joint return under section 6662(b)(2).

---

[20](...continued)
See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); see also Norgaard v. Commissioner, 939 F.2d 874, 879 (9th Cir. 1991), affg. in part and revg. in part T.C. Memo. 1989-390.

[21]See supra note 20.

Respondent acknowledges that respondent has the burden of production under section 7491(c) with respect to the accuracy-related penalty under section 6662(a). To meet that burden, respondent must come forward with sufficient evidence showing that it is appropriate to impose the accuracy-related penalty. Higbee v. Commissioner, 116 T.C. 438, 446 (2001).

Section 6662(a) imposes an accuracy-related penalty equal to 20 percent of the underpayment of tax attributable to, inter alia, a substantial understatement of tax, sec. 6662(b)(2). An understatement is equal to the excess of the amount of tax required to be shown in the tax return over the amount of tax shown in the tax return, sec. 6662(d)(2)(A), and is substantial in the case of an individual if it exceeds the greater of 10 percent of the tax required to be shown or $5,000, sec. 6662(d)(1)(A).

The amount of the understatement shall be reduced to the extent that it is attributable to, inter alia, the tax treatment of an item for which there is or was substantial authority. See sec. 6662(d)(2)(B)(i). In order to satisfy the substantial authority standard of section 6662(d)(2)(B)(i), petitioners must show that the weight of authorities supporting their tax return position is substantial in relation to those supporting a contrary position. See Antonides v. Commissioner, 91 T.C. 686, 702 (1988), affd. 893 F.2d 656 (4th Cir. 1990). That standard is not

so stringent that a taxpayer's treatment must be one that is ultimately upheld in litigation or that has a greater than 50-percent likelihood of being sustained in litigation. Sec. 1.6662-4(d)(2), Income Tax Regs. A taxpayer may have substantial authority for a position even where it is supported only by a well-reasoned construction of the pertinent statutory provision as applied to the relevant facts. See sec. 1.6662-4(d)(3)(ii), Income Tax Regs. There may be substantial authority for more than one position with respect to the same item. Sec. 1.6662-4(d)(3)(i), Income Tax Regs.

The accuracy-related penalty under section 6662(a) does not apply to any portion of an underpayment if it is shown that there was reasonable cause for, and that the taxpayer acted in good faith with respect to, such portion. Sec. 6664(c)(1). The determination of whether the taxpayer acted with reasonable cause and in good faith depends on the pertinent facts and circumstances, including the taxpayer's efforts to assess such taxpayer's proper tax liability, the knowledge and experience of the taxpayer, and the reliance on the advice of a professional, such as an accountant. Sec. 1.6664-4(b)(1), Income Tax Regs.

We have (1) sustained the determinations in the notice that gave rise to the deficiency that respondent determined[22] and

_____

[22]Those determinations include a determination to disallow the nonpassive loss of $103,150 from Mr. Hopkins's S Corporation that petitioners claimed in petitioners' Schedule E. That
(continued...)

(2) rejected petitioners' position that they are entitled to Mr. Hopkins's claimed Schedule C deduction of $67,084 that petitioners originally claimed in petitioners' Schedule E as part of the nonpassive loss of $103,150 from Mr. Hopkins's S Corporation.[23] On the record before us, we find that respondent has satisfied respondent's burden of production under section 7491(c) with respect to the accuracy-related penalty under section 6662(a) determined in the notice.

Petitioners argue that respondent's determination under section 6662(a) is wrong because "there is substantial authority for the Sole Proprietorship and the Subchapter S Corporation's tax treatment of the expenses for advertising and promotion." (We shall refer to that argument as petitioners' substantial authority argument.) Although respondent bears the burden of production with respect to the accuracy-related penalty at issue, respondent "need not introduce evidence regarding reasonable cause, substantial authority, or similar provisions. * * * the taxpayer bears the burden of proof with regard to those issues."[24] Higbee v. Commissioner, 116 T.C. at 446.

_____

[22](...continued)
nonpassive loss was equal to the sum of (1) Mr. Hopkins's S Corporation's claimed 1999 ordinary loss of $36,066 and (2) Mr. Hopkins's automobile racing expenditures of $67,084 claimed in Statement SBE included as part of petitioners' 1999 joint return.

[23]See supra note 22.

[24]We thus reject petitioners' argument that respondent
(continued...)

With respect to petitioners' substantial authority argument as it relates to Mr. Hopkins's claimed Schedule C deduction of $67,084, petitioners' treatment in their 1999 joint return of Mr. Hopkins's automobile racing expenditures of $67,084 is different from the position they are now advancing with respect to such expenditures. In petitioners' 1999 joint return, petitioners included Mr. Hopkins's automobile racing expenditures of $67,084 as part of the nonpassive loss of $103,150 from Mr. Hopkins's S Corporation that they claimed in petitioners' Schedule E.[25] Petitioners concede that that treatment was wrong. See supra note 14. On the record before us, we reject petitioners' substantial authority argument as it relates to Mr. Hopkins's claimed Schedule C deduction of $67,084.

With respect to petitioners' substantial authority argument as it relates to Mr. Hopkins's S Corporation's claimed advertising expense deduction of $3,130 and Mr. Hopkins's S Corporation's claimed promotional expense deduction of $39,000, we find that all of the authorities on which petitioners rely to support entitlement to those deductions are materially distinguishable

---

[24](...continued)
"failed to provide sufficient evidence that the Sole Proprietorship or Subchapter S Corporation's treatment of any item was not supported by substantial authority."

[25]The balance of the nonpassive loss of $103,150 from Mr. Hopkins's S Corporation that petitioners claimed in petitioners' Schedule E consisted of Mr. Hopkins's S Corporation's claimed 1999 ordinary loss of $36,066.

from the instant case, and their reliance on those authorities is misplaced.[26]  On the record before us, we reject petitioners' substantial authority argument as it relates to Mr. Hopkins's S Corporation's claimed advertising expense deduction of $3,130 and Mr. Hopkins's S Corporation's claimed promotional expense deduction of $39,000.

On the record before us, we find that petitioners have failed to carry their burden of establishing that there was reasonable cause for, and that they acted in good faith with respect to, any portion of the underpayment for petitioners' taxable year 1999.

Based upon our examination of the entire record in this case, we find that petitioners have failed to carry their burden of establishing that they are not liable for 1999 for the accuracy-related penalty under section 6662(a).[27]

We have considered all of the contentions and arguments of the parties that are not discussed herein, and we find them to be irrelevant, moot, and/or without merit.

To reflect the foregoing and the concessions of petitioners,

---

[26]See supra note 19.

[27]In light of our finding that petitioners are liable for the year at issue for the accuracy-related penalty because of a substantial understatement of tax under sec. 6662(b)(2), we shall not address respondent's argument that petitioners are liable for that year for that penalty because of negligence or disregard of rules or regulations under sec. 6662(b)(1).

Decision will be entered

for respondent.